468 S.E.2d 719

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**John A. LACY, Defendant Below, Appellant.**

**No. 23055.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 16, 1996.

Decided Feb. 15, 1996.

9. As a result of our decision, it is unnecessary for us to address the plaintiff's remaining two as- signments of error.

Mary Beth Kershner, Assistant Prosecuting Attorney, Charleston, for Appellee.

John Sullivan, Assistant Public Defender, Charleston, for Appellant.

CLECKLEY, Justice:

The defendant below and appellant herein, John A. Lacy, appeals his conviction for three counts of receiving stolen property in violation of W.Va.Code, 61–3–18 (1923). The defendant asserts the circuit court erred in admitting certain evidence against him under the plain view exception to the warrant requirement. Holding that the Fourth Amendment issues raised in this appeal cannot be decided on this record, we return this case to the circuit court with directions and guidance.

I.

FACTUAL AND PROCEDURAL HISTORY

On October 5 or 6, 1992, workmen discovered the home of Gary Turpin had been burglarized. Mr. Turpin and his family were staying with other family members while his house was being remodeled. On October 15, 1992, Mr. Turpin discussed the burglary with various neighbors because he suspected that a neighbor was involved with the robbery. Carrie Radford, the defendant's landlady, told Mr. Turpin he could look in the defendant's apartment when the defendant was not home.

Later during the day of October 15, Mr. Turpin and Ms. Radford entered the defendant's apartment. While in the apartment, Mr. Turpin discovered his television set, VCR, VCR tapes, mirrors, and wall hangings. The television and VCR were plugged in ready for use and the mirrors and wall hangings were on the walls of the defendant's apartment. After leaving the apartment, Mr. Turpin reported his findings to the Charleston Police Department.

Detectives Richard Westfall and James Rollins of the Charleston Police Department interviewed Mr. Turpin and then proceeded to the Kanawha County Magistrate Court to obtain a warrant to search the defendant's apartment. This warrant permitted the police to search for "a carton of 30 various VCR Tapes, 2 clown masks, Living Room Mirrors, [and a] Sharp Color T.V. with Remote Control[.]"

The officers located the television in the defendant's bedroom. After bullets were discovered lying on top of a dresser in the bedroom, Detective Westfall testified he and Detective Rollins searched for a weapon for security purposes. The detectives found a .38 special under a mattress. Detective Westfall requested a computer check be conducted on the serial number from the gun. The computer check revealed the gun and various other items had been reported by Mrs. Jean Johnson as stolen from her home between June 10 and 15, 1992. Detective Westfall left the defendant's apartment and returned to the station house while the rest of the search was conducted by other officers at the defendant's apartment.

Detective Westfall obtained a second warrant after learning about the burglary of Mrs. Johnson's home. Detective Westfall listed on the search warrant various items he had seen in the apartment and believed to be stolen. Under this second warrant, the police were entitled to search for a Samsung 19–inch television set, a wall clock with chimes, a Mitsubishi VCR, and six wall pictures. Before returning to the defendant's apartment with the second search warrant, the police called Mrs. Johnson. Mrs. Johnson's daughter, Judy Johnson, answered the telephone and informed the officer that her mother was not home and that her home also had been burglarized over the weekend of September 6 and 7, 1992.

After speaking with Detective Westfall, Judy Johnson called her mother and the two of them proceeded to the defendant's apartment. Mrs. Johnson saw her lamps, vacuum cleaner, Nintendo game and game cartridges, and various pictures. Judy Johnson discovered her sheets on the defendant's bed, towels, pictures, and clocks. However, Judy Johnson did not find her television or stereo.

All the above items were seized. The inventory listed approximately twenty-seven items in total were seized under the second warrant. The defendant was arrested the following day for receipt of stolen property.

On September 23, 1994, a suppression hearing was held concerning the items seized from the defendant's apartment. The defendant moved to suppress most of the evidence because several of the items were seized as a result of the warrantless search. Detective Westfall was the only officer called to testify at the hearing. He was unable to testify as to how the search was actually conducted or as to what the other officers saw during the search because he left the defendant's apartment before much of the search was conducted. The circuit court denied the defendant's motion finding that all the items, with the exception of some jewelry and a telephone calling card, were admissible under the plain view exception to the warrant requirement.

Subsequently, the defendant was convicted of two felony counts of transferring and receiving stolen goods in excess of $200 and one misdemeanor, lesser included count of transferring and receiving stolen goods valued at less than $200. The defendant was sentenced to five years probation to be served concurrently on all three counts. Subsequently, his probation on count one was revoked, and the defendant was sentenced to one year in jail. The defendant now appeals these convictions.

## II.

### DISCUSSION

On appeal the defendant maintains the search of the defendant's premises and the seizure of the items not authorized by the initial search warrant, including the firearm, was a violation of his rights under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution. The circuit court

found the items complained of were admissible under the plain view exception and specifically ruled the firearm was "within the purview of the officer's search."[1] We believe the parties below wrongly framed the issue and, in so doing, the wrong question was answered.[2] Because we find the correct framing of the issue concerning the seizure of the gun to be crucial, if not dispositive, we remand this case with specific guidance and directions.

### A.

#### Standard of Review

When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error. *State v. Lilly*, 194 W.Va. 595, 461 S.E.2d 101 (1995). In contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo*. *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994). Similarly, we review *de novo* whether a search warrant was too broad. *See United States v. Robertson*, 21 F.3d 1030, 1032, (10th Cir.1994). Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear

1. The transcript of the suppression hearing contained a typographical error in the spelling of the word "purview." We have corrected this error throughout this opinion.

2. The disposition of this case turns on the admissibility of the gun found in the defendant's apart-

ment following the execution of the first search warrant. Although several other items were seized from the defendant's apartment following the two searches, only those listed on the first warrant should be deemed admissible if the search and seizure of the gun cannot be justified.

that a mistake has been made.[3] If the circuit court did not make the necessary findings, the matter may either be remanded with appropriate directions or the circuit court's denial of a motion to suppress upheld if there is any reasonable view of the evidence to support it. *State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994).

## B.

### Analysis

On October 15, 1992, the Charleston Police Department secured a search warrant for the defendant's apartment after one of the victims of a house burglary informed the police that he had observed in the defendant's apartment a number of items taken during the burglary. After arriving at the apartment, the police began searching for the items listed on the warrant. Before completing the search, Detectives Westfall and Rollins discovered bullets on a dresser in the defendant's bedroom. The detectives then searched for and found a gun stuck underneath a mattress in the bedroom.

The litigants disagree on the motive and reason behind the search for the gun. The defendant asserts the "seizure of evidence in this case was the result of a general exploratory search which exceeded the scope authorized by a search warrant." (Emphasis deleted.) The State, on the other hand, argues the defendant ignores "the crucial justification for extending the original search of ... [the defendant's] apartment beyond the scope of the first search warrant." Under the State's theory, the police were justified in searching for the weapon because of the officer's fear that there might be a weapon on the premises that the defendant or others could use if the defendant returned during the course of the search. The serial number

listed on the gun ultimately lead the police to discover that other items in the apartment including the gun were stolen and was part of the basis for the second search warrant.

■ Our analysis begins with the text of the Fourth Amendment to the United States Constitution: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" and that prohibition binds the states. *Wolf v. Colorado*, 338 U.S. 25, 27, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782, 1785 (1949), *overruled on other grounds, Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Section 6 of Article III of the West Virginia Constitution, as well as the Fourth Amendment to the United States Constitution, prohibits the issuance of general warrants allowing officials to burrow through a person's possessions looking for any evidence of a crime. *State ex rel. White v. Melton*, 166 W.Va. 249, 273 S.E.2d 81 (1980); *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627, 642 (1976). The necessary interstices of the sweeping protection explicit in the constitutional text have been filled in by judicial interpretation.[4]

■ In discussing general search warrants, Fourth Amendment jurisprudence begins, of course, with *Marron v. United States*, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927), which erected an analytic framework grounded against exploratory searches. The *Marron* prohibition most commonly has been stated in terms of a general proposition: No item can be seized unless it is described in the search warrant. Further protection against exploratory searches is provided by the principle that a warrant must particularly describe the place to be searched and the things or persons to be seized. *State v.*

---

**3.** The defendant does not raise any issue regarding the legality of the police permitting private individuals to engage in the execution of the warrant. Most courts would permit private individuals to participate in a search only to the extent they are assisting or acting in aid of officers who are conducting a search authorized by a warrant. A private individual is not permitted to broaden the scope of the search nor can he or she conduct his or her own private or independent search of the premises pursuant to the war-

rant. *See generally Buonocore v. Harris*, 65 F.3d 347, 358 (4th Cir.1995) (and cases cited therein).

**4.** We have discussed on numerous occasions the importance of the warrant requirement under West Virginia jurisprudence. The "warrant requirement is intended to insure that a neutral and detached magistrate determine that a search is supported by probable cause." 1 Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* at I–251 (1993).

*Greer*, 130 W.Va. 159, 164–65, 42 S.E.2d 719, 722–23 (1947).

■■■■■ In determining whether a specific search warrant meets the particularity requirement, a circuit court must inquire whether an executing officer reading the description in the warrant would reasonably know what items are to be seized.[5] In circumstances where detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized. When a warrant is the authority for the search, the executing officer must act within the confines of the warrant. More pertinent to this case, the police may not use an initially lawful search as a pretext and means to conduct a broad warrantless search. *State v. Clements*, 175 W.Va. 463, 470, 334 S.E.2d 600, 607, *cert. denied*, 474 U.S. 857, 106 S.Ct. 165, 88 L.Ed.2d 137 (1985). To be sure, blatant disregard by the executing officer of the language of a search warrant can transform an otherwise valid search into a general one and, thus, mandate suppression of all or at least those items seized outside the scope of the warrant. *See United States v. Shilling*, 826 F.2d 1365, 1369 (4th Cir.1987), *cert. denied*, 484 U.S. 1043, 108 S.Ct. 777, 98 L.Ed.2d 863 (1988), *implied overruling on other grounds recognized by United States v. Starkes*, 32 F.3d 100 (1994). The execution of a search warrant must be directed in good faith toward the objects specified in the warrant.

■■■■ Engaging these constitutional standards, the parties to this appeal cannot, nor do they, contend the gun and other items not specifically mentioned in the warrants were seized pursuant to the warrants. To the contrary, the State argues that all items not covered by the warrants were seized under the plain view doctrine or to maintain the safety of the police officers as the search was being conducted. When the State seeks to introduce evidence that was seized during a warrantless search, it bears the burden of showing the need for an exemption from the warrant requirement and that its conduct fell within the bounds of the exception. *See generally Mincey v. Arizona*, 437 U.S. 385, 391, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290, 299 (1978) (citing *Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409, 413 (1970). In these situations, simply articulating a safety reason is insufficient; the burden of proof is with the party asserting the exception to establish that the exception is legitimate and not pretextual. A lower level of judicial scrutiny would only serve to increase the possibility of collusion and compound the difficulty encountered in detecting the real purpose of a warrantless search.

■■■■ There is no question but that activities which take place within the sanctity of the home merit the most exacting Fourth Amendment protection.[6] In *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 651 (1980), the United States Supreme Court stated: "It is a 'basic principle of Fourth Amendment Law' that searches and seizures inside a home without a warrant are presumptively unreasonable." Conversely, the search of a home for evidence of a crime generally is not unreasonable if it is conducted pursuant to a search warrant supported by probable cause. Of course, under the Fourth Amendment, searches conducted outside the judicial process, without prior approval, may be constitutional if the search and seizure can be justified under one of the well-delin-

5. A warrant should leave nothing "to the discretion of the officer executing the warrant." *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 512, 13 L.Ed.2d 431 (1965). In general, a warrant is sufficiently specific if it enables the searcher to reasonably ascertain and identify the things authorized to be seized.

6. In a dissenting opinion in *United States v. On Lee*, 193 F.2d 306, 315–16 (2nd Cir.1951), *aff'd*, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952), Judge Frank stated:

"A man [or woman] can still control a small part of his [or her] environment, his [or her] house; he [or she] can retreat thence from outsiders, secure in the knowledge that they cannot get at him [or her] without disobeying the Constitution. That is still a sizeable hunk of liberty—worth protecting from encroachment. A sane, decent, civilized society must provide some such oasis, some shelter from public scrutiny, some insulated enclosure, some enclave, some inviolate place which is a man's [or woman's] castle."

eated exceptions or where both exigent circumstances and probable cause exist.[7] *See Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *State v. Buzzard,* 194 W.Va. 544, 549, 461 S.E.2d 50, 55 (1995). *See also* Syl. pts. 1 & 2, *State v. Moore,* 165 W.Va. 837, 272 S.E.2d 804 (1980), *overruled in part on other grounds State v. Julius,* 185 W.Va. 422, 408 S.E.2d 1 (1991).

■ It is equally clear that the Fourth Amendment applies only to unreasonable searches and seizures. Indeed, the touchstone of the Fourth Amendment's promise is "reasonableness," which generally, though not always, translates into a warrant requirement. *Vernonia School Dist. 47J v. Acton,* — U.S. —, — – —, 115 S.Ct. 2386, 2390–91, 132 L.Ed.2d 564, 573–75 (1995). What is reasonable " 'depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself.' " *Skinner v. Railway Labor Executives' Assoc.,* 489 U.S. 602, 619, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639, 661 (1989). (Citation omitted). Courts are required to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110, 118 (1983).[8] In each case, it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. *See Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979).

■ Ultimately, the question of whether a particular search or seizure is reasonable for purposes of the Fourth Amendment is not a question of fact. Unlike a determination of "reasonableness" in ordinary tort cases and some other contexts, this balancing process presents a question of law. In order to resolve the reasonableness question presented here, the Court must first examine the more narrow question of wheth-

---

7. The test for the existence of exigent circumstances is whether the facts would lead a reasonable, experienced police officer to believe the evidence might be destroyed or removed before a warrant could be secured. There must be evidence both that an officer was "actually ... motivated by a perceived need to render aid or assistance" and "that a reasonable person under the circumstances must have thought that an emergency existed." *State v. Cecil,* 173 W.Va. 27, 32 n. 10, 311 S.E.2d 144, 150 n. 10 (1983). Recognized situations in which exigent circumstances exist include: danger of flight or escape; danger of harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence; and hot pursuit of a fleeing suspect. In note 11 of *State v. Buzzard,* 194 W.Va. 544, 549, 461 S.E.2d 50, 55 (1995), we stated: "Exigent circumstances exist where there is a compelling need for the official action and there is insufficient time to secure a warrant, police may then enter and search private premises ... without obtaining a warrant." *See also State v. Mullins,* 177 W.Va. 531, 355 S.E.2d 24 (1987).

Under the State's theory, exigent circumstances necessitated the search for the weapon in this case. Neither the State's brief nor the transcript of the suppression hearing indicates the police needed to prevent the destruction of evidence or the flight of the suspect; instead, it is argued that the probable existence of a gun was sufficient to raise the possibility that the "safety [of the police] or the safety of others may be threatened[.]"

The facts of this case simply do not exemplify the sense of immediacy or urgency typical of cases justified under exigent circumstances. For example, in *State v. Cecil, supra,* we upheld the search of a mobile home under exigent circumstances when the police had reason to believe that an injured or deceased child might be in the trailer. The evidence in this case does not support the State's assertion that the officers had a subjective belief that the suspected presence of a gun so endangered their lives that the emergency doctrine was appropriately called into play. To find that the seizure of the gun could be justified under exigent circumstances when none of the facts suggest the type of dire emergency typically characterizing an exigent circumstance case would turn almost every routine search and seizure into an exigent circumstance. Simply put, the exception would swallow the rule. Moreover, the State failed to demonstrate the additional element of probable cause that is one of the elements of the exigent circumstance requirement.

8. "As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a governmental search is reasonableness ... [and] [w]hether a particular search meets the reasonableness standard is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Vernonia School Dist. 47J v. Acton,* — U.S. at —, 115 S.Ct. at 2390, 132 L.Ed.2d at 574. (Citations, footnote, and internal quotations omitted).

er there was "reasonable suspicion" underlying the sweep and search for the gun. Of course, "[a]s the search becomes more intrusive, more suspicion is needed." *United States v. Vance*, 62 F.3d 1152, 1156 (9th Cir.1995). Because the search took place at the defendant's residence, the need for a heightened standard of suspicion is at its zenith. Thus, a reasonable belief that a firearm may have been within the residence, standing alone, is clearly insufficient to justify excusing the warrant requirement. However, adequate justification may exist when law enforcement officers fear for their safety.[9] "The circumstances that justify warrantless searches include those in which officers reasonably fear for their safety, where firearms are present, or where there is risk of a criminal suspect's escaping or fear of destruction of evidence." *United States v. Mendoza–Burciaga*, 981 F.2d 192, 196 (5th Cir.1992). *See also United States v. Caraza*, 843 F.2d 432, 435 (11th Cir.1988).

In *Maryland v. Buie*, 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276, 286 (1990), the Supreme Court recognized that following an in-home arrest, the police may conduct a protective sweep of the premises if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." In *Buie*, the police entered the defendant's home to execute an arrest warrant following an armed robbery allegedly committed by Buie and an accomplice. After Buie was apprehended emerging from the basement, one officer entered the basement "in case there was someone else" in it. Once inside, he spotted inculpatory evidence in plain view. In remanding the case for reconsideration under this "articulable facts" test, the Supreme Court noted that the officers' interest in protecting their physical safety in connection with an arrest was sufficient to outweigh the intrusion suffered by the defendant. 494 U.S. at 334–36, 110 S.Ct. at 1098–99, 108 L.Ed.2d at 286–87.

Although *Buie* concerned an arrest made in the home, the principles enunciated by the Supreme Court are fully applicable where, as here, the execution of a search warrant takes place inside the residence. That the police did not find the defendant inside his dwelling is relevant to the question of whether they could reasonably fear an attack by someone who may later enter the premises. The defendant's exact location, however, does not change the nature of the appropriate inquiry: Did articulable facts exist that would lead a reasonably prudent officer to believe a sweep or search for weapons was required to protect the safety of those on the scene?[10]

---

**9.** In the seminal case of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court found that when investigating suspicious activity, police officers may take reasonable measures to generally search for and seize any weapons found. *See also Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). The Supreme Court found this "brief, though far from inconsiderable, intrusion upon the sanctity of the person" is justified if an officer "has reason to believe that he is dealing with an armed and dangerous individual." *Terry v. Ohio*, 392 U.S. at 26 & 27, 88 S.Ct. at 1882 & 1883, 20 L.Ed.2d at 909.

A series of cases have followed *Terry, supra*, testing the limits of the *Terry* principles. For example, in *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the United States Supreme Court went one step further and applied *Terry* in the context of roadside encounters. In that case, the Supreme Court also balanced the individual's privacy interest with safety considerations and determined again that a brief intrusion to investigate for possible weapons within easy reach of a suspect was permissible. Noting that "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers[,]" the Supreme Court found prior case law compelled its conclusion that police are entitled to make a limited search of the areas in the passenger compartment of a vehicle where a weapon may be contained "if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. at 1047 & 1049, 103 S.Ct. at 3480 & 3481, 77 L.Ed.2d at 1218 & 1220, *quoting Terry v. Ohio*, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.

**10.** Nevertheless, the Supreme Court's language in *Buie* is not dispositive because the Supreme Court there merely reasoned that based on the facts in *Buie* the police officers' possession of probable cause entitled them to enter and sweep

The scope of the protective sweep sanctioned by *Buie* is informed by its justification: The need to protect law enforcement officers from attacks by concealed assailants during an in-home arrest. Like the searches authorized by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),[11] and *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983),[12] a *Buie*-sweep is a limited intrusion on privacy permissible on less than probable cause when circumstances warrant special precautions for the protection of law enforcement officers faced with potentially dangerous situations. Indeed, the *Buie* Court recognized the heightened danger of attacks launched from areas immediately surrounding the arrest scene and accordingly permitted, "as a precautionary matter and without probable cause or reasonable suspicion, ... [a brief search of] closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie*, 494 U.S. at 334, 110 S.Ct. at 1098, 108 L.Ed.2d at 286.

■ That is not to say, however, that *Buie* condones a top-to-bottom search of a private residence simply because law enforcement officers carry out a valid custodial arrest on the premises. To the contrary, the facts of *Buie* itself reveal that a protective sweep "is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Buie* 494 U.S. at 327, 110 S.Ct. at 1094, 108 L.Ed.2d at 281. *See also United States v. Hernandez*, 941 F.2d 133, 137 (2nd Cir.1991) (construing *Buie, Terry,* and *Long* together to sanction a limited protective search for weapons within the "grab area" of individuals, other than the arrestee, who the police reasonably believe pose a danger to those on the arrest scene).

■ We find the *Buie* principles relevant for the same reasons that encouraged the Supreme Court to first venture into this realm under *Terry, supra*—the safety of all individuals in a search area outweighs the limited intrusion into one's privacy.[13] Safety interests, however, cannot overcome all Fourth Amendment requirements; thus, these standards must be narrowly construed to prevent governmental overreaching.[14] The Supreme Court defined a protective sweep as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a

---

the residence—the Supreme Court did not and has never held that some additional probable cause is *required* to enter a residence to execute a search warrant.

**11.** *See* note 9, *supra*.

**12.** *See* note 9, *supra*.

**13.** *See also* Catherine A. Fiske, *Clean Sweeps: Protecting Officer Safety and Preventing the Imminent Destruction of Evidence*, 55 U.Chi.L.Rev. 684, 685 (1988) (noting "[i]n determining the validity of any warrantless search, the Supreme Court applies a balancing test to weigh the citizen's interest in freedom from arbitrary invasion against the state's interest in safe and effective law enforcement").

**14.** We see no reason not to extend the view of a "protective sweep" under *Buie, supra,* to situations where officers find evidence suggesting a potentially dangerous weapon may be present in the area where they are conducting a search. Officers should be permitted to search for a suspected weapon and secure it if the officers have a *reasonable* belief that failure to secure the

weapon will endanger themselves or private citizens. Although there is " ' "no ready test for determining reasonableness other than by balancing the need to search [or seize] ..." ' [and such searches involve a] 'severe, though brief, intrusion upon cherished personal security,' " this Court finds limited searches are reasonable when weighed against the interest in " 'crime prevention and detection,' ... and the 'need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause' " for a search even though something has raised the officers' suspicions of danger. *Michigan v. Long*, 463 U.S. at 1046–47, 103 S.Ct. at 3479, 77 L.Ed.2d at 1217–18. (Citations and footnote omitted). Moreover, it would " 'be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.' " *Michigan v. Long*, 463 U.S. at 1047, 103 S.Ct. at 3479, 77 L.Ed.2d at 1218. (Citations and footnote omitted). *See also Maryland v. Buie*, 494 U.S. at 335 n. 3, 110 S.Ct. at 1099–1100 n. 3, 108 L.Ed.2d at 287 n. 3 (stating "[a] protective sweep is without question a 'search'[;] ... they are permissible on less than probable cause only because they are

person might be hiding." *Maryland v. Buie*, 494 U.S. at 327, 110 S.Ct. at 1094, 108 L.Ed.2d at 281. We adopt this definition as it pertains to conducting a search for weapons. Thus, a protective search is defined as a "quick and limited search of premises" for weapons once an officer has individualized suspicion that a dangerous weapon is present and poses a threat to the well-being of himself and others. This "cursory visual inspection" is limited to the area where the suspected weapon could be contained and must end once the weapon is found and secured.

 Today, we hold that in the law enforcement context, law enforcement officials may interfere with an individual's Fourth Amendment interests with less than probable cause and without a warrant if the intrusion is only minimal and is justified for law enforcement purposes. *E.g., Michigan State Police Dept. v. Sitz*, 496 U.S. 444, 450–53, 110 S.Ct. 2481, 2485–86, 110 L.Ed.2d 412, 420–22 (1990); *Terry v. Ohio, supra.* To determine whether the intrusion complained of here was minimal, the circuit court must examine separately the interests implicated when the police felt that a search for weapons was necessary to keep the premises safe during the search and the privacy interests of the defendant to be free of an unreasonable search and seizure of his residence. Only when law enforcement officers face a circumstance, such as a need to protect the safety of those on the premises, and a reasonable belief that links the sought after information, the weapon in this case, with the perceived danger is it constitutional to conduct a limited search of private premises without a warrant.[15]

 To be clear, a search conducted on private premises not authorized by a warrant not only implicates the Fourth Amendment, but also falls squarely within the area of privacy interests for which the traditional probable cause requirement determines reasonableness in the law enforcement context. Nevertheless, we believe that when police are lawfully on premises pursuant to a valid warrant, additional searches and seizures to protect the safety of the officers executing the warrant in areas that conceivably could be searched pursuant to the warrant raises only *de minimus* Fourth Amendment concerns.[16]

limited to that which is necessary to protect the safety of officers and others" (Citation omitted)).

15. In *United States v. Ford*, 56 F.3d 265, 312 U.S.App.D.C. 301 (1995), the District of Columbia Circuit Court of Appeals considered a factual situation similar to the present case. In that case, law enforcement personnel entered the defendant's residence with an arrest warrant for the defendant. After arresting the defendant, the officers conducted a protective sweep of the general area. During this cursory view of the area, the officers discovered a gun clip in plain view on the floor of a bedroom. The officers continued to search the surrounding area and found money, drugs, and ammunition under a mattress and a gun under the shade on the window sill. The *Ford* court found that the defendant's Fourth Amendment rights were violated because no exigent circumstances existed that justified the officers' continued search of the area after discovering the gun clip. According to the court, "[o]nce in the bedroom pursuant to a legitimate protective sweep under *Buie*, and once having seen the gun clip in plain view, the law enforcement officers had available [other] reasonable measures to ensure their safety." *United States v. Ford*, 56 F.3d at 266, 312 U.S.App.D.C. at 302.

We do not take issue with the reasoning in the *Ford* case, as it applies to the specific facts of that case. However, there are critical differences between *Ford* and the case at bar, which make the reasoning in that case inapplicable here. The most significant distinction is that the officers in *Ford* entered the premises pursuant to an arrest warrant and immediately arrested the suspect. Thus, the suspect was placed quickly under the control of the police and the question of easy access to a weapon outside the immediate reach of the defendant was less of a problem. In this case, the police entered the defendant's apartment under a search warrant and the defendant's whereabouts were unknown. Second, the purpose of the search in *Ford* appeared to be simply to uncover evidence of criminal activity. Here, the State suggests the search was conducted for safety.

Although we find the *Ford* court's reasoning regarding exigent circumstances compelling, this does not end our analysis. We agree that conducting a protective sweep does not give an officer the right to simply search at will for evidence of a crime without a warrant or probable cause. However, the failure under the exigent circumstances exception does not mean that the search for weaponry cannot be justified for other limited purposes. Even when exigent circumstances have dissipated, courts have permitted certain "protective searches" without requiring a warrant or probable cause.

16. We concur with the *Buie* court that although

" '[t]raditionally, the sanctity of a person's home—his castle—requires that the police may

It must be emphasized that the scope of a search pursuant to a warrant is limited to the objects expressed therein, but it is conceivable that some of the objects sought could have been located in the bedroom where the weapon was found: "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross,* 456 U.S. 798, 820–21, 102 S.Ct. 2157, 2170–71, 72 L.Ed.2d 572, 591 (1982).[17]

■■■ *Terry* and its progeny indicate an increasing trend to slant the balance of privacy rights versus safety interests in favor of the police as long as the intrusion is limited and reasonable.[18] What may have raised judicial eyebrows at the time the *Terry* decision was issued regarding police safety has become commonplace in advance sheets today. As the court observed in *United States v. Clark,* 24 F.3d 299, 304, 306 U.S.App.D.C. 293, 298 (1994):

"While it was once considered necessary . . . for a law enforcement officer to be 'justified in believing that the individual whose suspicious behavior he [or she] is investigating . . . *is* armed and presently dangerous to the officer,' *Terry,* 392 U.S. at 24, 88 S.Ct. at 1881[, 20 L.Ed.2d at 908] (emphasis added), it now suffices, in appropriate circumstances, for the officer to be justified in believing that the individual *might* be armed and dangerous. . . . This development is a product of the times." (Citation omitted; emphasis in original).

At the time of the *Terry* decision, it might have been unreasonable to assume that a suspected thief would have dangerous propensities and pose a threat to the safety of officers executing a search warrant: "today it could be foolhardy for an officer to assume otherwise." *Clark,* 24 F.3d at 304, 306 U.S.App.D.C. at 298. We believe neither a showing of exigent circumstances nor probable cause is required to justify a search for weapons as long as minimal requirements are satisfied. A two-part test has emerged from these cases: An officer must show there are specific articulable facts indicating danger and this suspicion of danger to the officer or others must be reasonable.[19] If these two elements are satisfied, an officer is entitled to take protective precautions and search in a limited fashion for weapons.

■■■ The reasonableness of the officer's beliefs and actions will be left initially to a circuit court to evaluate. "In evaluating the validity of an officer's investigative or protective conduct . . . the '[t]ouchstone of . . . [the circuit court's] analysis . . . is always "the reasonableness in all circumstances of the particular governmental intrusion of a citizen's personal security." ' " *Michigan v. Long,* 463 U.S. at 1051, 103 S.Ct. at 3481–82,

not invade it without a warrant except under the most exigent of circumstances[;] . . . once the police are lawfully within the home, their conduct is measured by a standard of reasonableness. . . . [I]f there is a reason to believe that the arrestee had accomplices who are still at large [ (or in this case weapons) ], something less than probable cause—reasonable suspicion—should be sufficient to justify a *limited additional intrusion* to investigate the *possibility* of their presence.' " 494 U.S. at 329, 110 S.Ct. at 1095, 108 L.Ed.2d at 282–83. (Citation omitted; emphasis in original).

**17.** The defendant suggests that even if the weapon was seized under the safety justification, the police exceed their authority in inspecting the weapon for serial numbers and using that information as a basis to obtain another warrant. We disagree. "It would be absurd to say that an object could lawfully be seized and taken from the premises, but could not be moved for closer examination." *Arizona v. Hicks,* 480 U.S. 321,

326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347, 354 (1987).

**18.** As a general rule officers conducting legal encounters with a person reasonably suspected of criminal activity are authorized to "take such steps as . . . [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley,* 469 U.S. 221, 235, 105 S.Ct. 675, 684, 83 L.Ed.2d 604, 616 (1985).

**19.** In *Maryland v. Buie,* 494 U.S. at 327, 110 S.Ct. at 1095, 108 L.Ed.2d at 282, the Supreme Court stated: "[I]f the searching officer 'possesse[d] a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed]" the officer in believing,' . . . that the area swept harbored an individual posing a danger to the officers or others." (Citations omitted).

77 L.Ed.2d at 1221. (Citations omitted.) "A court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion[.]" *United States v. Sokolow*, 490 U.S. 1, 10, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1, 12 (1989). The existence of a reasonable belief should be analyzed from the perspective of the police officers at the scene, rather than from a 20/20 vision of hindsight. *See Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443, 455 (1989). We ask not what the *police* could have done but whether they had, at the time, a reasonable belief that there was a need to act without a warrant.[20] Though " 'the reasonableness test [under the Fourth Amendment] is not capable of precise definition or mechanical application,' " it must be underscored that police officers executing search warrants are often forced to make split-second decisions about what is needed to protect themselves from criminal elements, while operating under tense, dangerous, and rapidly changing circumstances. *Graham v. Connor*, 490 U.S. at 396, 109 S.Ct. at 1872, 104 L.Ed.2d at 455. (Citation omitted).[21] In making its ultimate determination, the circuit court must employ a common-sense approach considering the "totality of circumstances— whole picture," weighing the evidence "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981).

We turn now to the question of whether this Court should uphold the circuit court's decision to admit the gun at trial. The circuit court made the following finding in regard to the gun:

> "The Court makes a specific finding that the .38 caliber was within the purview of the officer's search. The officer, on executing the search warrant, has the right to make a cursory view for any weapons and seize any weapons that may be determined. Even though it was found under a concealed mattress, I still find that to be appropriate, as well as the ammunition."

It is unclear what the circuit court meant when it stated that the gun was "within the purview of the officer's search." The word "purview" can mean both within the authority to do something and within the line of sight. *See The Random House Dictionary of the English Language* at 1570 (2nd ed.1987). Presumably, the circuit court felt the seizure of the gun was justified under the plain view doctrine. Because we believe that the seizure of the gun is highly questionable under plain view due to *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987),[22] we have limited our consideration of

---

**20.** Factors a circuit court may consider might include: (1) the likelihood that the suspected weapon could cause real injury, (2) the traditional use of the recovered weapon, (3) the distance required and the ease of using said weapon before the weapon could inflict likely injury, (4) how many officers were present during the search, (5) how controlled the environment, (6) the presence of anyone besides the officers, etc. This is not meant to be an exhaustive list nor is it this Court's intent to stretch the protective sweep doctrine so far that it would destroy the Fourth Amendment protections.

**21.** There is some evidence to support a finding that at the time the officers needed to act, they faced only two realistic choices. They either could have looked for weapons and, if found, seize them, or they could have located the defendant and detained him pending execution of the search warrant. *See Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) (officers may detain persons on premises while warrant is being executed). Given the circumstances presented, and in particular the concerns for safety presented by the execution of a search warrant, the circuit court may believe the facts are sufficient to find the officers made a reasonable decision in line with the policies underlying the Fourth Amendment. We do not undertake this metaphysical task of determining the relative intrusiveness of the two alternatives. The circuit court could very well find that looking for and detaining the defendant until the execution of a search warrant could be realized might have been highly intrusive. "Where officers face no clear answer regarding which of the two courses of conduct represents a greater intrusion on citizens' privacy, the Fourth Amendment generally leaves the choice between those alternatives to the discretion of law enforcement officials." *United States v. Johnson*, 862 F.2d 1135, 1140 (5th Cir.1988).

**22.** The "plain view" doctrine will justify a warrantless search if: (1) the officers lawfully entered the area where the items were located; (2) the items were in plain view; (3) the incriminating nature of the items was "immediately apparent"; and (4) the officers had a lawful right of access to the items. *See Horton v. California*,

the issue to the sole exception relied on by the State in this appeal—the safety of the officers. To satisfy the Fourth Amendment of the United States Constitution and Section 6 of Article III of the West Virginia Constitution, the circuit court must make an explicit finding as to the "reasonableness" of the police conduct by indicating a careful balancing of the private interests versus governmental interests.

Whether the "ingredients to apply the balance struck" in *Terry, Long,* and *Buie* exist in this case is a question for the circuit court to determine after carefully considering the totality of the circumstances.[23] Therefore, we remand this case for further proceedings consistent with this opinion. If the circuit court finds that the reason the police in this case were conducting a warrantless search for the gun was merely as a pretext for a general search of the area to seize the fruits of a crime, then the search and seizure requirement has been violated and all evidence seized as a result of the unlawful seizure of the gun must be found inadmissible and excluded. However, if the circuit court finds that the police had a reasonable and individualized suspicion that there was a dangerous weapon present and the officers' fear of danger was reasonable in the context of the case, then the Fourth Amendment is not offended by a limited search to locate and secure the weapon.[24]

---

23. Viewed in context and accepted as true, we, as an appellate court, are not persuaded that the

record evidence compels the conclusion that the search for the gun was objectively reasonable, especially when there is no evidence or suggestion that anyone on the premises posed a real risk of danger, or threatened the peace, property, or safety of anyone. Nevertheless, we believe this decision should first be made by the circuit court that necessarily has a better vantage point to decipher the evidence. Accordingly, the determination as to the "reasonableness" of the police conduct must be remanded for further proceedings.

24. We place no limits on the scope of any hearing permitted by the circuit court to address the issues we discuss above. We note there are several issues raised by the defendant in this appeal that we do not address. The defendant should be given the opportunity to assert these issues anew in the context of today's ruling and the State should be given a reasonable opportunity to respond.

---

## III.

## CONCLUSION

For the foregoing reasons, we remand this case with directions to the Circuit Court of Kanawha County.

Remanded with directions.

---

496 U.S. 128, 136–37, 110 S.Ct. 2301, 2307–08, 110 L.Ed.2d 112, 122–23 (1990); Syl. pt. 3, *State v. Julius,* 185 W.Va. 422, 408 S.E.2d 1 (1991). The defendant does not challenge the validity of the initial search warrant or the officer's entry into his home or bedroom. The issue here is whether the incriminating nature of the weapon was "immediately apparent." The officers must have probable cause to believe that the item seized is contraband and there is nothing in our opinions to suggest that merely finding a weapon in someone's private residence will always give rise to probable cause. In *Hicks,* the officer's search of the stereo was improper because, based upon his knowledge and experience, he lacked probable cause to suspect that the equipment was stolen or evidence of a crime. *See Hicks,* 480 U.S. at 328, 107 S.Ct. at 1154, 94 L.Ed.2d at 356 (holding that "probable cause to believe the equipment was stolen was required" to justify officer's search of stereo found in plain view).