# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0595** (Harrison County 19-F-26-2)

**William Clyde Jeffries,**
**Defendant Below, Petitioner**

# MEMORANDUM DECISION

Petitioner William Clyde Jeffries, by counsel Christopher M. Wilson and Jonathan D. Fittro, appeals the order of the Circuit Court of Harrison County, entered on July 13, 2020, sentencing him to imprisonment for a term of five to eighteen years upon his conviction of murder in the second degree. Respondent State of West Virginia appears by counsel Patrick Morrisey and William E. Longwell.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Though Mr. Jeffries was a suspect when the body of a young boy was found near his home in 1981, the police investigation of the boy's murder stalled and was eventually labeled a "cold case." Late in 2017, Cpl. Baron Claypool of the West Virginia State Police and Sgt. Dixon Pruitt of the Harrison County Sheriff's Department examined the case file and took an interest in Mr. Jeffries. The case file included the report of a psychological evaluation of Mr. Jeffries that was conducted just a month prior to the murder. This report reflected the opinion that Mr. Jeffries was "of lower [intellectual] functioning[,]" but competent. The officers spoke with Mr. Jeffries' half-brother before speaking with Mr. Jeffries, and the brother relayed his belief that Mr. Jeffries was likely "mentally retarded."

Mr. Jeffries appeared for an interview with Cpl. Claypool and Sgt. Pruitt on February 15, 2018. At the officers' request, he returned five days later, on February 20, 2018, to submit to a polygraph examination and a second interview. Mr. Jeffries was accompanied by his sister on both occasions. On the second occasion, he signed an acknowledgment of his receipt of the required

1

*Miranda*[1] warning. Though Mr. Jeffries mentioned his possible desire for legal counsel several times during the interview, he continued to speak to the officers and eventually conceded that he "maybe cut [the victim] a little bit" and "might have choked" the victim. Finally, he told officers that if given the opportunity, he would tell the victim's parents "[t]hat I'm sorry I killed their son."

After Mr. Jeffries was criminally charged, the State gave notice of its intent to offer his statement at trial, and he responded by filing a motion to suppress. After conducting the necessary hearing, the circuit court denied the motion to suppress and proceeded to conduct the jury trial. Mr. Jeffries was convicted of second-degree murder and sentenced accordingly.

On appeal, Mr. Jeffries assigns error to the circuit court's denial of his motion to suppress his statements and, in particular, the second, confessional one. Our standard of review is described as follows:

> "When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syllabus Point 1, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996).

Syl. Pt. 1, *State v. Deem*, 243 W. Va. 671, 849 S.E.2d 918 (2020). Because Mr. Jeffries confessed to killing his victim, we also are mindful that

> [w]here the question on appeal is whether a confession admitted at trial was voluntary and in compliance with *Miranda* with respect to issues of underlying or historic facts, a trial court's findings, if supported in the record, are entitled to this Court's deference. However, there is an independent appellate determination of the ultimate question as to whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of *Miranda* and the United States and West Virginia Constitutions. *See Miller v. Fenton*, 474 U.S. 104, 110-14, 116-18, 106 S.Ct. 445, 449-52, 453, 88 L.Ed.2d 405, 411-13, 415-16 (1985).

*State v. Potter*, 197 W. Va. 734, 741, 478 S.E.2d 742, 749 (1996).

Mr. Jeffries' single assignment of error, in subpart, states that the circuit court erred in finding that the "interrogation did not violate [his] Sixth Amendment [rights]." The State succinctly and correctly explains that Mr. Jeffries' Sixth Amendment right to counsel was not compromised, because he appeared for a noncustodial police interview unconnected with the judicial process. "The Sixth Amendment right to counsel attaches *at the time judicial proceedings have been initiated against a defendant* whether by way of formal charges, preliminary hearing,

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

indictment, information, or arraignment." Syl. Pt. 1, *State v. Bowyer*, 181 W. Va. 26, 380 S.E.2d 193 (1989) (emphasis supplied). Comparatively, "[the] Fifth Amendment right to counsel is triggered when a defendant *is taken into custody* by law enforcement officials who desire to interrogate him." *State v. Hickman*, 175 W. Va. 709, 716, 338 S.E.2d 188, 195 (1985) (emphasis supplied). Because Mr. Jeffries was neither named in judicial proceedings nor subject to custodial interrogation, we find that these constitutional rights were not triggered. Consequently, we concentrate our inquiry on the question of whether the State established that Mr. Jeffries voluntarily offered his statements. "The burden is on the State to prove by a preponderance of the evidence that extrajudicial inculpatory statements were made voluntarily before the statements can be admitted into evidence against one charged with or suspected of the commission of a crime." Syl. Pt. 1, *State v. Bradshaw*, 193 W. Va. 519, 457 S.E.2d 456 (1995).

The crux of Mr. Jeffries' argument is that Cpl. Claypool and Sgt. Pruitt were apprised of his diminished capacity and should have considered that Mr. Jeffries believed himself to be in police custody when the officers interviewed him. In this regard, we must consider "[w]hether [his] extrajudicial inculpatory statement is voluntary or the result of coercive police activity [as] determined from [our] review of the totality of the circumstances." *See id*. at 523, 457 S.E.2d at 460, Syl. Pt. 2.

It is of critical note that the only clinical document available to the officers concerning Mr. Jeffries' intellectual functioning labeled him as "competent," according to the uncontroverted testimony of Sgt. Pruitt. Furthermore, this was the only clinical evidence mentioned to the circuit court when it heard Mr. Jeffries' motion to suppress. Any diminished capacity affecting the voluntariness of Mr. Jeffries' confession, then, must be apparent on the face of the record to merit a determination that the circuit court's denial of the motion to suppress was clear error. But when denying the motion to suppress, the circuit court explained that it extensively reviewed the recordings of Mr. Jeffries' statements and found that Mr. Jeffries gave "lucid . . .[,] appropriate . . .[, and] detailed" answers without asking officers to stop the interview. It further explained that Mr. Jeffries was no novice to the criminal justice system. Mr. Jeffries had served a term of incarceration for reasons not apparent on the face of the record, and Cpl. Claypool testified that he had prior dealings with Mr. Jeffries in his role as a state trooper. Certainly, Mr. Jeffries' statements evince an awareness that legal counsel was his right. We stress that the circuit court's findings demonstrate meticulous consideration of Mr. Jeffries' statements.

Likewise, we have extensively reviewed the appendix record on appeal and, particularly, Mr. Jeffries' statements. Having done so, we find no evidence that Mr. Jeffries believed himself to be in custody when he voluntarily presented himself for a noncustodial interview with Cpl. Claypool and Sgt. Pruitt, and we find no evidence that Mr. Jeffries' perception changed at any time thereafter. There is, therefore, no clear error in the circuit court's finding that Mr. Jeffries' statement was voluntarily given.

For the foregoing reasons, we affirm.

Affirmed.

3

**ISSUED:** January 12, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton

4