*State v. Charles Eric Ward*, 22-0211

**FILED**
**November 9, 2023**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Armstead, Justice, concurring:

I concur with the majority opinion's conclusion that Petitioner Charles Eric Ward's ("Petitioner") conviction should be reversed because the State failed to make the required showing under our plain view warrantless seizure test. However, for the reasons explained below, I disagree with the majority opinion's conclusion that the police officers violated the Fourth Amendment by arriving in the basement where Petitioner's firearm was located. I believe the police officers' concern for their own safety justified their entry into the basement. While I disagree with the majority opinion's analysis on this issue, I nevertheless find that Petitioner's conviction should be reversed because the State did not make another required showing under our plain view warrantless seizure test in that it failed to demonstrate that the incriminating nature of the firearm was immediately apparent.

The issue in this case is whether the plain view warrantless seizure was proper. "It is well established that under certain circumstances the police may seize evidence in plain view without a warrant." *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971). This Court set forth our test when examining a plain view warrantless seizure in syllabus point three of *State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991):

> The essential predicates of a plain view warrantless seizure [which] are (1) that the officer did not violate the Fourth Amendment in arriving at the place from which the incriminating evidence could be viewed; (2) that the item was in plain view and its incriminating character was also immediately apparent; and (3) that not only was the officer lawfully located in a place from which the object could be

1

plainly seen, but the officer also had a lawful right of access to the object itself.

As stated, the majority opinion concluded that the State did not satisfy the first element of the above test. The inquiry under the first element is whether the police officers violated Petitioner's Fourth Amendment rights by standing in the doorway of the basement when they viewed the firearm. The circuit court found that the officers' conduct was reasonable for the purposes of their safety. In syllabus point six of *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996), this Court held:

> Neither a showing of exigent circumstances nor probable cause is required to justify a protective sweep for weapons as long as a two-part test is satisfied: An officer must show there are specific articulable facts indicating danger and this suspicion of danger to the officer or others must be reasonable. If these two elements are satisfied, an officer is entitled to take protective precautions and search in a limited fashion for weapons.

I agree with the circuit court's conclusion that the State satisfied the first element of *Julius* based on the officers' concern for their own safety. It is undisputed that when the officers arrived at Petitioner's mother's home, they were responding to a volatile conflict between neighbors and that Petitioner was "agitated" by the confrontation. Because of his level of agitation, the officers reasonably found it necessary to stay close to him and asked him for identification. Petitioner then voluntarily led the officers away from his mother's front porch, where his initial encounter with the officers occurred, walked around the outside of the house, eventually arriving at the separate basement entrance. The

2

circuit court found Detective Queen's testimony to be credible that Petitioner gave his consent for the officers to enter as they crossed the basement threshold.

Additionally, the circuit court's ruling is supported by Petitioner's cooperative actions in leaving the porch area where he spoke with the officers and entering the interior of the basement, aware that officers were following him. There is no evidence that Petitioner was unreasonably compelled to lead the officers as he did and, in fact, Detective Queen testified that Petitioner was cooperative. This Court has held that

> [c]onsent to search may be implied by the circumstances surrounding the search, by the person's prior actions or agreements, or by the person's failure to object to the search. Thus, a search may be lawful even if the person giving consent does not recite the talismanic phrase: "You have my permission to search."

Syl. Pt. 1, *State v. Flippo*, 212 W. Va. 560, 575 S.E.2d 170 (2002). Because Petitioner implied his consent by voluntarily leading the officers to the room containing the prohibited firearm and affirmatively allowed the officers to enter the basement when they asked for permission, I would find that the first prong of *Julius* is satisfied.

While I disagree with the majority opinion's conclusion that the State did not satisfy the first element of *Julius*, I agree that Petitioner's conviction should be reversed because the State did not demonstrate that the incriminating nature of the firearm was immediately apparent. The second element of *Julius* contains two-parts: (1) was the item in plain view and (2) was its incriminating character immediately apparent. Syl. Pt. 3, 185 W. Va. 422, 408 S.E.2d 1. There is little doubt that the firearm was in plain view from the officers' vantage point in the basement doorway. Therefore, the key inquiry is whether the

3

incriminating nature of the firearm was "immediately apparent." Justice Cleckley addressed this issue in *State v. Lacy*, stating:

> The officers must have probable cause to believe that the item seized is contraband and *there is nothing in our opinions to suggest that merely finding a weapon in someone's private residence will always give rise to probable cause.* In *Hicks*, the officer's search of the stereo was improper because, based upon his knowledge and experience, he lacked probable cause to suspect that the equipment was stolen or evidence of a crime. *See Hicks*, 480 U.S. at 328, 107 S.Ct. at 1154, 94 L.Ed.2d at 356 (holding that "probable cause to believe the equipment was stolen was required" to justify officer's search of stereo found in plain view).

196 W. Va. 104, fn. 22, 468 S.E.2d 719, fn. 22 (emphasis added).

In the instant case, Detective Queen did not know that Petitioner was prohibited from having the firearm when he initially saw it in the basement. Detective Queen described what happened when he initially saw the firearm:

> I went over and retrieved the weapon, and I made a general statement, 'You're not allowed to have this.' The general statement was – it could go one of two ways: If you're an innocent person without a felony, then you'll say, 'I have a right to bear arms, et cetera;' otherwise, you'll respond with a different answer. He responded, 'That's not mine, that's somebody else's,' and then through conversation he did admit that he was a felon.

It is clear from Detective Queen's testimony that it was not immediately apparent to him that Petitioner was a felon who was prohibited from owning a firearm. Detective Queen's "general statement" was asked with the intention of gathering that information, i.e., whether Petitioner was a felon. Because the incriminating nature of the firearm was not "immediately apparent" when Detective Queen entered the basement, the

4

State did not satisfy the plain view warrantless seizure test as set forth by this Court in syllabus point three of *Julius*. Therefore, I would have reversed Petitioner's conviction on this basis.