# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 22-0412** (Berkeley County 21-F-243)

**Corey Nipper,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Corey Nipper appeals the Circuit Court of Berkeley County's May 13, 2022, order sentencing him to one to five years for possession with intent to deliver synthetic cathinones, consecutive to one to five years for failure to appear.[1] Petitioner entered a conditional guilty plea to these offenses, reserving the right to challenge the circuit court's order regarding the search and seizure at petitioner's residence. Upon our review, we determine oral argument is unnecessary and that a memorandum decision is appropriate. *See* W. Va. R. App. P. 21(c).

On June 19, 2018, Patrolman Shelton of the Martinsburg Police Department received a complaint that a person named Corey was in possession of one or more firearms that had been previously reported stolen in Jefferson County, West Virginia. The complainant further provided Patrolman Shelton with the location and appearance of Corey's residence, and a general description of the stolen firearms. After receiving this information, Patrolman Shelton, Corporal Harper, and Patrolman Williamson went to petitioner's residence on South Raleigh Street in Martinsburg to investigate. The officers' investigation and their interactions with the residents of the home were recorded on Patrolman Shelton's body cam.

Patrolman Shelton knocked on petitioner's door, and a person peeked out from behind a curtain covering the front window. Patrolman Shelton identified himself as a police officer and told the person to "open the door, I just want to talk to you real quick." A woman, later identified as petitioner's wife Tekira Wimberly, opened the door and Patrolman Shelton asked if there was anyone else in the residence. Wimberly responded that her husband Corey Nipper and a roommate were inside. Patrolman Shelton asked Wimberly to "have Corey come talk to me if you don't mind," and Wimberly complied with his request. Petitioner came outside and complied with Patrolman Shelton's request that he sit down in a chair on the front porch. Patrolman Shelton asked

---

[1] Petitioner appears by counsel Matthew T. Yanni. Respondent appears by Attorney General Patrick Morrisey and Assistant Attorney General Katherine M. Smith.

1

petitioner if there was anyone else in the residence, and petitioner responded, "my roommate . . . Richard Rhodes." Patrolman Shelton then informed petitioner that he received information that "a guy came here and sold you some guns and those guns were stolen," and stated "the best thing for you to do is be honest with me because otherwise" the officers would detain everyone in the house and get a search warrant for the residence. Patrolman Shelton told petitioner he was "not in any trouble" and he wanted to locate the stolen firearms and get them back to the victim. Petitioner initially denied buying any guns, but then admitted a person named John brought a shotgun to him and it was inside the residence.

Patrolman Shelton asked if he could go inside the house to get the shotgun and petitioner pointed his thumb toward the door stating, "you can go look." Patrolman Shelton then asked petitioner if he had a "problem if we go in your house," to talk to Rhodes. Petitioner consented, stating "yeah, you can go." Patrolman Shelton refused petitioner's request to allow Wimberly to get Rhodes from inside the residence. Patrolman Shelton and another officer then went in the residence to retrieve Rhodes. While inside petitioner's residence, the officers observed a bag of white powder in plain view on a table which was suspected to be an illegal controlled substance. The officers escorted Rhodes out of the residence and Patrolman Shelton asked if they could go back in the house to see if there was anyone else there. Wimberly denied there was anyone else in the residence but consented to the officers' reentry. Officers then reentered the residence but found no one else inside. Petitioner also gave consent for Patrolman Shelton to retrieve the shotgun from behind a couch. Petitioner offered to get the gun himself, but Patrolman Shelton refused, stating "I don't want you in here grabbing guns." Patrolman Shelton then entered the residence and retrieved the shotgun. After Patrolman Shelton returned outside with the shotgun, petitioner, Wimberly, and Rhodes all gave verbal consent to search the residence. But rather than relying upon the residents' consent to conduct a full search of the residence, the officers obtained a search warrant from the Magistrate Court of Berkeley County. During the search, officers seized two bags of white powder, three firearms, scales, sandwich bags, United States currency, and green flakes suspected to be marijuana.

On May 30, 2019, petitioner was indicted for possession with intent to deliver methamphetamine, possession with intent to deliver marijuana, conspiracy to deliver methamphetamine, conspiracy to deliver marijuana, possession of cocaine, and two counts of possession of a firearm by a prohibited person. On October 26, 2021, the grand jury issued a superseding indictment charging petitioner with possession with intent to deliver marijuana, possession with intent to deliver synthetic cathinones, conspiracy to deliver controlled substances, three counts of possession of a firearm by a prohibited person, and failure to appear.

Petitioner filed a motion to suppress, characterizing the officers' entries into his residence as unlawful protective sweeps that were not justified by exigent circumstances or consent. After a hearing, the circuit court denied petitioner's motion to suppress, finding that "valid consent to enter the residence was granted for every entry into the home prior to officers obtaining the search warrant." Further, the court found exigent circumstances justified both warrantless entries because the officers "had reason to believe a stolen firearm(s) was in the residence," and they did not want Rhodes or anyone else in the residence to endanger their safety or destroy evidence. The court rejected petitioner's argument that the State waived its right to argue that exigent circumstances

were present because the State did not brief this issue in its response to petitioner's motion to suppress. Petitioner appeals from the circuit court's denial of this motion to suppress.

> When reviewing a circuit court's ruling on a motion to suppress, we
>
> construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Syl. Pt. 1, in part, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996). Further, "the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo.*" *Id.* at 107, 468 S.E.2d at 722, Syl. Pt. 2.

Petitioner argues the court erred in finding he voluntarily consented to the officers' entries into his residence. When this Court evaluates the voluntariness of petitioner's consent, it considers the following criteria:

> 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel. While each of these criteria is generally relevant in analyzing whether consent is given voluntarily, no one factor is dispositive or controlling in determining the voluntariness of consent since such determinations continue to be based on the totality of the circumstances.

Syl. Pt. 3, in part, *State v. Buzzard*, 194 W. Va. 544, 461 S.E.2d 50 (1995).

During the hearing on petitioner's motion to suppress, the court viewed video from Patrolman Shelton's body cam that showed the officers' interactions with petitioner and the other residents of the home. This video shows that petitioner verbally consented to the officers' entry into his residence to locate his roommate Richard Rhodes and to locate the stolen shotgun. The video further reflects that petitioner's wife consented to the officers' entry into the residence to look for additional occupants.

When petitioner and his wife provided consent, they were detained by officers and informed that if they did not consent to the officers' entry, the officers would obtain a search warrant for the residence. However, petitioner was sitting on his front porch and was not handcuffed or otherwise under duress. Moreover, the officers' threat was not baseless, because the officers possessed detailed information that petitioner had at least one stolen firearm at his residence on South Raleigh Street in Martinsburg. Prior to the officers' entry into his residence, petitioner corroborated this information when he admitted that he had received a shotgun from John, and it was inside his residence. This is an admission of criminal activity that, when combined

with the information already possessed by the officers, could have formed the factual basis for a search warrant. Further, this admission shows petitioner's cooperation with law enforcement prior to giving consent. After a careful consideration of the totality of circumstances in this case, we find the circuit court did not err when it found petitioner and his wife voluntarily consented to "every entry into the home prior to officers obtaining the search warrant." Given that the officers had consent each time they entered the residence, we find the officers warrantless entries into the residence were reasonable. Thus, we reject this assignment of error.

Finally, petitioner challenges the circuit court's ruling that exigent circumstances justified the officers' protective sweeps of the residence, and claims the State waived its right to argue exigent circumstances because this issue was not briefed in the State's response to petitioner's motion to suppress. Because we have already determined the officers had valid consent to enter the residence when they found the controlled substance in plain view, we decline to address these assignments of error.

For the reasons stated above, this Court finds the circuit court did not err when it denied petitioner's motion to suppress, and affirms the May 13, 2022, final order of the Circuit Court of Berkeley County.

**ISSUED:** January 25, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton

**DISSENTING:**

Justice C. Haley Bunn

Bunn, Justice, dissenting:

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the errors alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted, not a memorandum decision. Accordingly, I respectfully dissent.