**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**November 20, 2024**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia,**
**Plaintiff Below, Respondent**

**v.) No. 23-120** (Roane County 44-2021-F-60)

**Sean Allen Taylor,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner/defendant below Sean Allen Taylor[1] appeals the February 3, 2023, sentencing order entered by the Circuit Court of Roane County wherein petitioner entered a conditional guilty plea to the felony offense of driving while license revoked for driving under the influence, third offense,[2] allowing him to appeal the court's denial of his motion to suppress evidence obtained during a traffic stop. Petitioner maintained that the traffic stop giving rise to the criminal charges in this case was invalid because it was premised on his expired motor vehicle inspection sticker, but the enforcement of the statute requiring renewal of motor vehicle inspection stickers had been suspended by a Governor's Executive Order issued in the midst of the COVID-19 pandemic. Although the State conceded that the officer made a mistake of law regarding petitioner's requirement to renew his expired inspection sticker, the court found that the stop was valid because the officer's mistake was an objectively reasonable mistake of law. Accordingly, the Circuit Court denied petitioner's motion to suppress. Petitioner contends that the officer's mistake of law was not objectively reasonable and that the circuit court's ruling was in error.

This Court has now carefully considered the briefs and oral arguments of the parties, the submitted record, and the pertinent authorities. Upon review, we find that the circuit court committed no error. Because there is no substantial question of law and no prejudicial error, a memorandum decision is appropriate pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

---

[1] Petitioner appears by counsel Olivia M. Lee. The State of West Virginia appears by Attorney General Patrick Morrisey, Assistant Solicitor General Frankie Dame and Deputy Attorney General Andrea Nease Proper.

[2] Petitioner was sentenced to a term of not less than one year nor more than three years in prison, and a $3,000 fine, as well as other costs.

## I. Factual and Procedural History

Life in West Virginia, the United States and countries around the world was upended in 2020 by the COVID-19 global pandemic and the ensuing chaos that stemmed therefrom.[3] This pandemic created a public health emergency impacting nearly every aspect of life in West Virginia. The President of the United States determined that the national emergency began on March 1, 2020.[4] Thereafter, Governor James C. Justice, II ("Governor Justice") issued a State of Emergency Declaration on March 16, 2020,[5] finding that the pandemic constituted a disaster,[6] and invoking the emergency powers vested in the Office of the Governor. At that time Governor Justice expressly "delegate[d] to all state agencies the ability to suspend rules, if strict compliance therewith would in any way prevent, hinder or delay necessary action in coping with the emergency." *Id.* Additionally, by Executive Order No. 7-20 (Mar. 19, 2020), Governor Justice ordered several statutes to be suspended for the duration of the State of Emergency.[7] This included the "[d]eadlines for annual vehicle inspections (W. Va. Code § 17C-16-1, *et seq*.)."[8]

---

[3] *See* https://www.ncbi.nlm.nih.gov.books/NBK554776; *State ex rel. Porter v. Farrell*, 245 W. Va. 272, 282 n.15, 858 S.E.2d 897, 907 n.15 (2021).

[4] *See* Presidential Proclamation No. 9994, 85 Fed. Reg. 15337 (Mar. 13, 2020) *Proclamation on Declaring a National Emergency concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, White House (Mar. 13, 2020),

[5] Proclamation, W. Va. Exec. Dep't of the Governor (Mar. 16, 2020), https://governor.wv.gov/Documents/2020%20Proclamations/State-of-Emergency-March-16-2020.pdf.

[6] West Virginia Code section 15-5-2 (2005) defines "disaster" as

> the occurrence or imminent threat of widespread or severe damage, injury, or loss of life or property resulting from any natural, or terrorist, or man-made cause, including weapons of mass destruction, fire, flood, earthquake, wind, snow, storm, chemical or oil spill or other water or soil contamination, epidemic, air contamination, blight, drought, infestation, or other public calamity requiring emergency action.

*Id.*

[7] Exec. Order No. 7-20, W. Va. Exec. Dep't of the Governor (Mar. 19, 2020), https://governor.wv.gov/Documents/2020%20Executive%20Orders/Executive-Order-March-21-2020-Statutes.pdf.

[8] Article 16 of Chapter 17C addresses the inspection of vehicles. West Virginia Code section 17C-16-1 specifically provides:

(continued . . .)

In response to the COVID-19 crisis, throughout 2020 and 2021 Governor Justice issued numerous Executive Orders impacting how State agencies and citizens of West Virginia conducted business. These orders were based upon changing conditions and guidance from state and national leaders as the pandemic evolved.[9] On July 20, 2021, Governor Justice signed Executive Order No. 23-21, an order that terminated Executive Order No. 7-20 effective October 1, 2021.[10]

On July 9, 2021—before the termination of the Executive Order suspending required motor vehicle inspections—petitioner was driving on Harmony Road in Roane County, West Virginia, when he was stopped by a member of the West Virginia State Police. As a result of the traffic stop petitioner was charged with three offenses: driving while license revoked for driving under the influence, third offense; driving without insurance; and failure to display motor vehicle inspection.

At petitioner's preliminary hearing the trooper who stopped petitioner testified that he pulled petitioner over because he observed that the inspection sticker on petitioner's vehicle was expired. Although the traffic stop occurred in 2021, it is undisputed that the motor vehicle inspection sticker on the vehicle driven by petitioner expired in 2018. The trooper later testified before the grand jury that he had additional grounds for the traffic stop: his personal knowledge that petitioner did not hold a valid operator's license. Specifically, before the grand jury the trooper testified:

> I observed a vehicle traveling in my direction. It was a Chevy pickup truck and it had an extremely expired [motor vehicle inspection] sticker. I then observed one of the Taylor brothers driving it, which I did know both had no legal license at that time, so I turned on that vehicle and conducted a traffic stop on it for that.

Petitioner filed a motion to suppress, arguing that the trooper's sole reason for the traffic stop was an expired motor vehicle inspection sticker, even though enforcement of the pertinent motor vehicle inspection regulation had been suspended by Executive Order No. 7-20. Accordingly, petitioner contended that the traffic stop was illegal and any evidence derived therefrom should be suppressed. The State conceded that the trooper initiated the traffic stop due

---

No person shall drive or move on any highway any motor vehicle, trailer, semitrailer, or pole trailer, or any combination thereof unless the equipment upon any and every said vehicle is in good working order and adjustment as required in this chapter and said vehicle is in such safe mechanical condition as not to endanger the driver or other occupant or any person upon any highway.

*Id.* West Virginia Code § 17C-16-4(a) (2016) required at times relevant to this action inspection of vehicles registered in West Virginia annually.

[9] *See* https://governor.wv.gov/Pages/WV-COVID-19-actions-and-executive-orders.aspx.

[10] Exec. Order No. 7-20, W. Va. Exec. Dep't of the Governor (July 20, 2021), https://governor.wv.gov/Documents/2021%20Executive%20Orders/EO-23-21-July-20-2021.pdf.

to an "expired motor vehicle inspection sticker at a time when Executive Order [No.] 7-20 continued to suspend statutory deadlines pertaining to motor vehicle inspections." However, the State contended that under the decision of the Supreme Court of the United States in *Heien v. North Carolina*, 574 U.S. 54 (2014), the trooper's mistake of law was objectively reasonable, arguing that the trooper's interpretation of the motor vehicle inspection law was correct; he was merely mistaken whether the statute continued to be suspended by Executive Order. The State maintained that it was objectively reasonable for the trooper to be mistaken as to whether the Executive Order remained in effect and continued to suspend the provisions of West Virginia Code section 17C-16-9. Thus, the State contended that the trooper's reasonable mistake of law did not nullify his articulable reasonable basis for stopping the vehicle. Petitioner replied that *Heien* was not applicable because a mistake of law requires the language in the statute to be ambiguous to allow a reasonable misinterpretation, whereas here the statute was suspended, leaving no room for a misinterpretation.

The circuit court entered an order denying the motion to suppress, concluding that the test for a Fourth Amendment challenge is reasonableness. Per the court, although the language of Executive Order No. 7-20 appears to suspend only that statute governing the annual motor vehicle inspection requirement, the use of the abbreviation "*et seq.*" in the Executive Order means "and the following[,]" referring to multiple consecutive sections, many of which are unrelated to the requirement that individuals have their vehicles inspected annually. For example, the court noted

> [i]t is difficult to fathom that the [Executive] Order intended to suspend the prohibition against issuing counterfeit certificates or suspend the State Police's authority to revoke or suspend a station's permit to issue certificates of inspections; however the vagueness of the [Executive] Order leaves it open to interpretations which subsections were suspended.

Accordingly, guided by the Supreme Court's decision in *Heien,* the circuit court reasoned that "[t]he ambiguous language and lack of clarity in Executive Order No. 7-20 leaves numerous interpretations regarding which subsections were suspended. Therefore, it was reasonable for [the trooper] to believe that [petitioner's] expired inspection sticker violated the law." The court found that because the stop was based on the trooper's objectively reasonable mistake of law, it was a valid, lawful stop,[11] and therefore denied petitioner's motion to suppress. Petitioner appeals.

## II. Standard of Review

This case is before us on petitioner's appeal of an order that denied his motion to suppress. "[L]egal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations

---

[11] The circuit court, however, dismissed the count in the indictment pertaining to failure to display a current motor vehicle inspection sticker, because the statute in question was suspended at the time of petitioner's stop and, therefore, his conduct "cannot constitute a violation of the law."

of witness credibility are accorded great deference." Syl. Pt. 3, in part, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994).

Further, "[w]hen reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below." Syl. Pt. 1, in part, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996). Moreover,

> [i]n contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo.* . . . Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made.

196 W. Va. at 107, 468 S.E.2d at 722, Syl. Pt. 2, in part.

With these standards in mind, we proceed to the parties' arguments.

### III. Discussion

Petitioner's sole argument is that the trooper's mistake of law as to Executive Order No. 7-20 was not objectively reasonable and led to an illegal stop of his vehicle. He maintains that his traffic stop was the result of the trooper's belief that petitioner's expired motor vehicle inspection sticker violated West Virginia law. However, the trooper was mistaken; Executive Order No. 7-20 had suspended motor vehicle inspections at the time petitioner was stopped. He contends that this mistake of law—as conceded by the State—resulted in a stop that was invalid. The question before the circuit court was whether the trooper's mistake of law was objectively reasonable.[12] Petitioner argues that because Executive Order No. 7-20 had been in place for well over a year before the traffic stop it was not; the State argues that it was.

It is well established that before an officer may lawfully pull over a motor vehicle the officer must have "an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime[.]" Syl. Pt. 1, in part, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994). "When evaluating whether or not

---

[12] In light of our determination that the stop was based upon an objectively reasonable mistake of law under the specific and limited circumstances of this case as discussed *infra* in greater detail, we decline to address in any detail the State's argument that petitioner's traffic stop was permissible because the trooper had an alternative basis for the stop: the officer's personal knowledge that the driver did not have a valid license. We simply note that the State conceded before the circuit court that the basis for the stop was an expired motor vehicle inspection sticker and, therefore, is foreclosed from raising an alternative basis for the stop for the first time on appeal. *See State v. Costello*, 245 W. Va. 19, 26, 857 S.E.2d 51, 58 (2021).

5

particular facts establish reasonable suspicion, one must examine the totality of the circumstances, which includes both the quantity and quality of the information known by the police." *Id.* at 429, 452 S.E.2d at 887, Syl. Pt. 2. Moreover, an officer must "articulate facts which provide some minimal, objective justification for the stop[,]" a standard that is considerably less demanding than that needed to establish probable cause. *Id.* at 432-433 n.10, 452 S.E.2d at 890-891 n.10.

To establish an articulable reasonable suspicion, "[t]he officer . . . must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch."'" *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). The United States Supreme Court has established that an officer is permitted to "formulate[] certain common sense conclusions about human behavior" in so doing. *United States v. Cortez*, 449 U.S. 411, 418 (1981). If an officer did not have an articulable reasonable suspicion to stop a vehicle, the stop violates the individual's constitutional right against unreasonable seizures. *See State v. Legg*, 207 W. Va. 686, 536 S.E.2d 110 (2000) ("[S]topping an automobile and detaining its occupants constitutes a 'seizure' within the meaning of [the Fourth Amendment and Article III, section 6 of the West Virginia Constitution.]"). If evidence gathered from such a stop "is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *State v. Flippo*, 212 W. Va. 560, 578 n.20, 575 S.E.2d 170, 188 n.20 (2002) (quoting *Illinois v. Krull*, 480 U.S. 340, 347 (1987)); *see Legg*, 207 W. Va. at 693, 536 S.E.2d at 117 (determining that evidence discovered during the search of the defendant's vehicle should have been suppressed because the officers lacked reasonable suspicion to stop the vehicle).

It also is well established that "the touchstone of the Fourth Amendment's promise is 'reasonableness.'" *State v. Snyder*, 245 W. Va. 42, 47, 857 S.E.2d 180, 185 (2021). "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Heien*, 574 U.S. at 60-61 (quoting *Brinegar v. United States,* 338 U.S. 160, 176 (1949)). The Supreme Court has observed that "[r]easonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law." *Id.* at 61. Moreover, the Supreme Court has found reasonable mistakes of law "no less compatible with the concept of reasonable suspicion" than similar mistakes of fact. *Id.*

We turn to whether the circuit court erred in its finding that the trooper's mistake about the status of the Executive Order constituted an objectively reasonable mistake of law justifying the traffic stop pursuant to *Heien*, 574 U.S. at 54. In *Heien*, the officer stopped the vehicle because it had only one operable brake light, a condition which the officer believed to be a violation of law.[13] *Id.* After stopping the vehicle, the officer discovered cocaine and charged Mr. Heien with drug trafficking.

---

[13] The North Carolina statute provided "[e]very motor vehicle... shall have all originally equipped rear lamps . . . which lamps shall exhibit a red light plainly visible. . . ." N.C. Gen. Stat. Ann. § 20-129(d) (West 2015). Further, it provided "[all motor vehicles] shall be equipped with a stop lamp on the rear of the vehicle . . . . The stop lamp may be incorporated into a unit with one or more other rear lamps." *Id.* § 20-129(g).

The trial court denied Mr. Heien's motion to suppress after concluding that the brake light had given the officer reasonable suspicion to initiate the stop.[14] *Id.* at 58. The Supreme Court of North Carolina determined that the officer "could have reasonably, even if mistakenly read the vehicle code to require that both brake lights be in good working order" by referencing a nearby code provision that required "all originally equipped rear lamps" be functional.[15] Ultimately, the court concluded that the officer's mistaken interpretation of the statute was reasonable and, therefore, determined that the stop was valid. *Id.* at 59. The United States Supreme Court affirmed and held that although a traffic stop required reasonable suspicion, the reasonable suspicion for the investigatory stop can rest on a mistake of law. Stated another way, *Heien* held a "mistake of law can . . . give rise to the reasonable suspicion necessary to uphold [a] seizure under the Fourth Amendment." *Id.* at 67. However, the *Heien* Court cautioned that it did not allow condone a "sloppy study of the laws [an officer] is duty-bound to enforce" and emphasized that "[t]he Fourth Amendment tolerates only *reasonable* mistakes and those mistakes—whether of fact or law—must be *objectively* reasonable. We do not examine the subjective understanding of the particular officer involved." *Id.* at 66; *see also id.* at 69 (Kagan, J., concurring) ("an officer's 'subjective understanding' is irrelevant"). The Supreme Court held that in addition to reasonable mistakes of fact, "reasonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion." *Id.* at 61.[16]

---

[14] The North Carolina Court of Appeals reversed the decision of the trial court; and the North Carolina Supreme Court ultimately reversed the court of appeals. The United States Supreme Court granted certiorari and affirmed the decision of the Supreme Court of North Carolina. *See Heien*, 574 U.S. at 68.

[15] The *Heien* Court noted the potential confusion caused by the related subsections:

> [a]lthough the North Carolina statute at issue refers to "*a* stop lamp," suggesting the need for only a single working brake light, it also provides that "[t]he stop lamp may be incorporated into a unit with one or more *other* rear lamps" N.C. Gen.Stat. Ann § 20-129(g) (emphasis added). The use of "other" suggests to the everyday reader of English that a "stop lamp" is a type of "rear lamp." And another subsection of the same provision requires that vehicles "have all originally equipped rear lamps or the equivalent in good working order," § 20-129(d), arguably indicating that if a vehicle has multiple "stop lamp[s]," all must be functional.

*Heien*, 574 U.S. at 67-68.

[16] We previously considered the *Heien* case in *Frazier v. Stire*, No. 19-0411, 2020 WL 6624968 (W. Va. Nov. 12, 2020) (memorandum decision), where we noted that "*Heien* involves the suppression of evidence obtained pursuant to a traffic stop. It does not pertain to the lawfulness of an extra-territorial arrest." *Id.* at *7. We noted that even if *Heien* were applicable, the officer's belief about his ability to execute statewide DUI arrests was not reasonable under the facts of that (continued . . .)

At the time of the traffic stop in the underlying case petitioner's motor vehicle inspection sticker had long since expired—a fact undisputed before this Court.[17] Additionally, the parties agree that an expired motor vehicle inspection sticker ordinarily would provide sufficient reasonable suspicion to justify the trooper's investigatory stop of petitioner. However, the State concedes that the motor vehicle inspection sticker requirement was suspended by Executive Order No. 7-20. Thus, although an expired motor vehicle inspection sticker would ordinarily provide a reasonable basis for petitioner's traffic stop, it did not provide such a basis at the time of petitioner's stop.."

The trooper believed, albeit mistakenly, that petitioner's extremely expired motor vehicle inspection sticker provided a reasonable basis for petitioner's traffic stop. The question before this Court is whether the trooper's mistaken belief was objectively reasonable, allowing it to give rise to the reasonable suspicion necessary to effectuate the traffic stop. The circuit court determined the trooper's mistaken belief resulted from Executive Order No. 7-20's reference to "West Virginia Code section 17C-16-1 *et seq.*"—a phrase that the court determined was ambiguous, lacked clarity, and left numerous interpretations as to which motor vehicle statutes within Article 16 it addressed. On appeal, petitioner argues that the executive order was "clear" and that there was "no existent ambiguity upon which the officer could have reasonably reached the wrong legal conclusion." In response, the State quotes that part of the circuit court order labeling the executive order "ambiguous.

To resolve petitioner's appeal, *Heien* requires that we scrutinize the language of the law.[18] Executive Order No. 7-20 did not include a specific termination date but instead states that "for the duration of the State of Emergency," the "following statutory regulations are to be suspended for the duration of the State of Emergency: . . . 14. Deadlines for annual vehicle inspections (W.

---

case. *Id*. at *7. Thus, we affirmed the circuit court's conclusion that the DMV failed to establish a lawful arrest, a prerequisite to a valid revocation. *Id.*

[17] Both parties argue that the seventeen-month time lapse from the issuance of Executive Order No. 7-20 until the stop is important: petitioner argues that the length of time in which the Executive Order was in place suggests that the officer's ignorance could not be objectively reasonable, conversely, the State suggests that the gap between the issuance of the Executive Order and petitioner's arrest along with the numerous amendments to the COVID-19 guidance during that timeframe provided uncertainty as to whether the motor vehicle statutory regulation remained suspended on the date of petitioner's stop. As we consider this case as it came before the circuit court in the summer of 2021 we must be: (1) mindful of the frequency by which Executive Orders were issued during the pandemic; (2) conscious that at different times throughout the pandemic Executive Orders impacted nearly every aspect of everyday life; (3) aware that Executive Orders were issued and lifted at different points throughout the pandemic; and (4) cognizant that by its very terms Executive Order No. 7-20 applied only during a State of Emergency, a period normally of relatively short duration (unlike the extended COVID-19 State of Emergency).

[18] Neither petitioner nor the State argues that *Heien* does not apply in these circumstances where an Executive Order, rather than a statute, is involved.

8

Va. Code § 17C-16-1, *et seq.*) . . . ."[19] The State of Emergency began on March 16, 2020. By executive order entered on July 20, 2021, the Governor ended Executive Order No. 7-20 effective October 1, 2021. Thus, Executive Order No. 7-20 suspended the "deadlines for annual vehicle inspections" from March 16, 2020 until October 1, 2021.[20]

While that language appears straightforward, the circumstances of petitioner's traffic stop demonstrate its genuine ambiguity.[21] That is, the executive order can be read in at least two different ways: (1) vehicles could be operated without a valid inspection sticker between March 16, 2020 and October 1, 2021, or (2) one could continue to operate his or her vehicle even if the vehicle's inspection sticker expired between March 16, 2020 and October 1, 2021. Again, petitioner's vehicle inspection expired in 2018. So, under the first reading, he did not violate § 17C-16-9 when he operated his vehicle on July 9, 2021 because vehicles were not required to have a valid inspection sticker between March 16, 2020 and October 1, 2021. But under the second reading, petitioner did violate § 17C-16-9 when he operated his vehicle on July 9, 2021 because his inspection sticker expired before March 16, 2020.[22] Either reading of Executive Order No. 7-20 is reasonable.

The *Heien* majority recognized this sort of ambiguity and based its decision, in part, on the challenge it presents to officers operating in the field:

> In Heien's view, no such margin [of error] is appropriate for questions of law: The statute here either requires one working brake light or two, and the answer does not turn on anything "an officer might suddenly confront in the field." Brief for Petitioner 21. But Heien's point does not consider the reality that an officer may "suddenly confront" a situation in the field as to which the application of a statute is unclear—however clear it may later become. A law prohibiting "vehicles" in the park either covers Segways or not, *see* A. Scalia & B. Garner, Reading Law: The

---

[19] Emphasis added.

[20] In contrast, West Virginia Code section 17C-16-9, which was impacted by Executive Order No. 7-20, was a long-standing statutory requirement that had not been revoked, or even amended by the Legislature for nearly thirty years before petitioner's stop.

[21] *See, e.g.*, *Sizemore v. State Farm Gen. Ins. Co.*, 202 W.Va. 591, 596, 505 S.E.2d 654, 659 (1998) (internal quotations and citation omitted). (statute is ambiguous where it is "susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning").

[22] Respectfully, this case differs from *State v. Robertson*, cited by the dissent. *State v. Robertson*, 223 N.E.3d 56, 69 (Oh. Ct. App. 2023). In that case, the "plain language of [the state legislation at issue] provide[d] that, outside the several well-delineated exceptions, any vehicle registration that was 'otherwise expiring' *during the period of emergency—March 9, 2020 through December 1, 2020*—'remain[ed] valid' under the law." *Id*. (emphasis added) (quoting Oh. H.B. 197 (eff. March 27, 2020)). Unfortunately, Executive Order 7-20 did not contain such plain language, and so presents the ambiguity discussed, above.

Interpretation of Legal Texts 36–38 (2012), but an officer will nevertheless have to make a quick decision on the law the first time one whizzes by.

That logic applies no less to the situation confronted by Trooper Mack on July 9, 2021. Given the genuine ambiguity in Executive Order No. 7-20, Trooper Mack's mistake (suspecting that petitioner was committing a crime on July 9, 2021, by operating a vehicle with a 2018 inspection sticker) was a reasonable mistake of law.

The question is not whether a certain ambiguity contributed to the "understanding of *the particular officer involved*," here, Trooper Mack. The question is whether the officer's mistaken belief that the defendant's conduct amounted to a violation of the law (here, operating a vehicle with a 2018 inspection sticker on July 9, 2021) was, nevertheless, an objectively reasonable take on the law.[23]

*Heien* calls upon a court to analyze an officer's mistake of law and determine, as concurring Justice Kagan put it, "whether overturning the officer's [mistaken] judgment requires hard interpretive work." If it does, "then the officer has made a reasonable mistake," and the traffic stop remains justified by a reasonable suspicion. Such is the case, here. Affirming the circuit court's order here does not "support[] an officer's complete ignorance of the law or condone[] an officer's poor training"[24] in view of Trooper Mack's testimony in whole.[25] Petitioner's counsel asked Trooper Mack during the preliminary hearing if he was aware "of an executive order . . . implementing a stay on the requirement to have updated vehicle motor vehicle inspections?" Trooper Mack responded that he was not aware "[o]f any changes in the law," but petitioner's counsel did not clarify whether Trooper Mack meant that he was unaware of Executive Order 7-20, specifically, or of some other change to a law relevant to vehicle registration. And Trooper Mack later testified that he was "absolutely" aware of, in the words of petitioner's counsel, "executive orders pursuant to COVID-19 that the governor has implemented in regard to these types of things[.]" *Heien* excuses an officer's objectively reasonable mistake of law; it does not excuse "complete ignorance" of it. Here, Trooper Mack was not completely ignorant of COVID-era executive orders. Instead this was an ambiguous executive order and a reasonable take on it: that petitioner engaged in illegal conduct by operating a vehicle with a 2018 inspection sticker on July 9, 2021.

---

[23] *See Heien*, 574 U.S. at 66 (stating that it is "the antecedent question of whether it was reasonable for an officer to suspect that the defendant's conduct was illegal" that determines whether "there was [a] violation of the Fourth Amendment in the first place").

[24] *Robertson*, 223 N.E.3d at 72.

[25] We caution that a *Heien* "mistake of law" will excuse an officer's mistaken belief as to the law only in exceedingly rare circumstances. Like the United States Supreme Court, we do not condone an officer's "sloppy study of the laws he is duty-bound to enforce." *Heien,* 574 U.S. at 67.

As noted, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made. *See* Syl. Pt. 2, *State v. Lacy,* 196 W. Va. 104, 468 S.E.2d 719 (1996). Based on the unique facts presented in this case, and limited to these facts, following our de novo review we cannot conclude that the circuit court's decision to deny petitioner's motion to suppress evidence from the stop that occurred in this case was in error; it was supported by substantial evidence and was based on the court's interpretation and application of our law and that of the Supreme Court in *Heien*. Accordingly, we affirm the circuit court's order denying petitioner's motion to suppress based on the court's conclusion that the trooper had a reasonable suspicion to stop petitioner's vehicle, and the reasonable suspicion rested on an objectively reasonable mistaken understanding of whether West Virginia Code section 17C-16-1 was suspended by Executive Order No. 7-20 at the time of the stop.

## IV.  Conclusion

For the foregoing reasons, we affirm the February 3, 2023, order of the Circuit Court of Roane County.

Affirmed.

**ISSUED**: November 20, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice William R. Wooton

**DISSENTING:**

Justice John A. Hutchison
Justice C. Haley Bunn

BUNN, Justice, dissenting, and joined by Justice Hutchison:

I disagree with the majority's conclusion, which affirms the circuit court's denial of Mr. Taylor's motion to suppress the evidence resulting from a state trooper's illegal stop of his vehicle. The majority reasons that Governor's Justice's Executive Order No. 7-20 suspending deadlines for annual vehicle inspections was ambiguous, and could be interpreted two ways, although the State made no such argument to the circuit court. Instead, before the circuit court, the State acknowledged in its response to Mr. Taylor's motion to suppress that the trooper did not know that the Executive Order remained in effect. Consequently, the trooper could not make a reasonable mistake about its application—which takes his conduct out of a *Heien* analysis. *See Heien v. North Carolina*, 574 U.S. 54, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014). In other words,

11

the trooper "*did not know the law* and thus could not make a reasonable mistake about it." *Flint v. City of Milwaukee*, 91 F. Supp. 3d 1032, 1058 (E.D. Wis. 2015). It is one thing to be mistaken about the law; it is quite another to not know what the law is to begin with.

The majority's determination that the Executive Order was ambiguous gilds ignorance into statutory ambiguity. This ignorance of the applicable law was not a reasonable mistake of law that would justify the stop of Mr. Taylor's vehicle. Therefore, I respectfully dissent.

In early July 2021 a state trooper stopped Mr. Taylor's vehicle, which had an inspection sticker that had expired in 2018. During the preliminary hearing, the trooper testified that he stopped the vehicle because the motor vehicle inspection sticker had expired. Yet, at the time of the stop, the plain language of the Executive Order suspended "deadlines for annual vehicle inspections" during the "duration of the State of Emergency" related to the Covid-19 pandemic, reading as follows:

> NOW, THEREFORE, I, JIM JUSTICE, pursuant to the authority vested in me pursuant to [West Virginia Code § 15-5-6], hereby DECLARE and ORDER that, the following statutory regulations are to be suspended for the duration of the State of Emergency:
>
> . . . .
>
> 14. Deadlines for annual vehicle inspections (W. Va. Code § 17C-16-1, *et seq*.).

Mr. Taylor filed a motion to suppress the evidence and information obtained from the stop, claiming the stop was unlawful because, at the time and due to the Executive Order, driving with an expired inspection sticker was not illegal. The State filed a response, arguing that the mistake of law was objectively reasonable in light of *Heien v. North Carolina* because the trooper's "interpretation of the law was correct *but he was unaware said requirements continued to be suspended* by Executive Order of the Governor." (Emphasis added). In his reply, Mr. Taylor contended that the trooper's lack of knowledge was not a mistake of law as considered in *Heien*.[1] The lower court, relying only on the parties' filings and the transcript from the preliminary hearing before the magistrate court where the trooper testified, determined that the trooper made a reasonable mistake of law and denied Mr. Taylor's motion.[2] Mr. Taylor and the State then entered into a conditional plea agreement to permit him to challenge the circuit court's order denying his motion to suppress. In resolving this appeal, the majority concludes that the

---

[1] Mr. Taylor primarily—and in my view, correctly—argued that "The issue in Mr. Taylor's case centers on knowledge, not understanding, and knowledge, or lack thereof, is not a mistake of law as discussed in *Heien*."

[2] To the extent that the majority includes the trooper's grand jury testimony in its recitation of facts, the record contains no indication that either party ever presented the grand jury testimony to the circuit court for consideration.

Executive Order was ambiguous, and thus the trooper made an objectively reasonable mistake of law as to whether it applied to a person "operating a vehicle with a 2018 inspection sticker on July 9, 2021"—even though the State *conceded* below that the trooper was "unaware" the "requirements" regarding the deadlines for annual vehicle inspections "continued to be suspended."

As the majority correctly recognizes, a law enforcement officer may stop a vehicle without violating the Fourth Amendment's prohibition on seizure if the officer has "an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime." Syl. pt. 1, in part, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994). The Supreme Court of the United States, in *Heien v. North Carolina*, explained that an objectively reasonable mistake of law "can nonetheless give rise to the reasonable suspicion necessary to uphold the seizure under the Fourth Amendment." 574 U.S. at 57, 135 S. Ct. at 534, 190 L. Ed. 2d 475. In its discussion of the applicable standard for a mistake of law, the Court emphasized that the mistake must be "*objectively* reasonable," instructing that courts "do not examine the subjective understanding of the particular officer involved." *Id.* at 66, 135 S. Ct. at 539, 190 L. Ed. 2d. 275.

As the majority explains, in *Heien*, an officer stopped the defendant's vehicle because only one brake light on the vehicle worked; the other brake light was broken. *Id.* at 57, 135 S. Ct. at 534, 190 L. Ed. 2d. A North Carolina appellate court later interpreted the relevant statute, which required that a car must be "'equipped with a stop lamp on the rear of the vehicle,'" to require only one brake light to legally operate the vehicle, so the *actual* law did not support the officer's reason for the stop. *Id.* at 59, 135 S. Ct. at 535, 190 L. Ed. 2d 475 (quoting N.C. Gen. Stat. Ann. § 20-129(g)). In its analysis, the Supreme Court carefully reviewed the North Carolina statute regarding required brake lights, as well as another subpart of the same statute, all of which involved lamps required on a vehicle. *Id.* at 67-68, 135 S. Ct. at 540, 190 L. Ed. 2d 475. In meticulously examining the statute and subdivisions, the Supreme Court, as well as the North Carolina appellate courts, concluded that the statutory requirement that rear lamps be in working order could be reasonably understood to include brake lights, and the Supreme Court further recognized that the provision had not been "previously construed" at the time of the stop. *Id.*

Ultimately, the Supreme Court determined that it was "objectively reasonable for an officer in [the officer's] position" to believe that the defendant's "faulty right brake light" violated North Carolina law, concluding that "because the mistake of law was reasonable, there was reasonable suspicion justifying the stop." *Id.* at 68, 135 S. Ct. at 540, 190 L. Ed. 2d 475. In other words, the officer in *Heien* made "a reasonable mistake of law based on *his understanding of the law*." *Flint*, 91 F. Supp. 3d at 1058 (discussing *Heien*). The mistake was *objectively* reasonable "because conflicting interpretations of the statute—as evidenced by later judicial decisions that struggled to interpret it—resulted in different, but objectively reasonable conclusions as to its applicability." *Id.* at 1058-59. Relatedly, the *Heien* Court warned that "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is dutybound to enforce." 574 U.S. at 67, 135 S. Ct. at 539-40, 190 L. Ed. 2d 475.

Justice Kagan's *Heien* concurrence, joined by Justice Ginsburg, explains the narrowness of the *Heien* analysis when courts determine whether an officer's objectively reasonable mistake

of law justifies the reasonable suspicion for a stop. *See State v. Sutherland*, 176 A.3d 775, 782 (N.J. 2018) ("[A] number of states have either followed or acknowledged Justice Kagan's narrow interpretation of an objectively reasonable mistake of law when deciding similar issues under the rubric of *Heien*'s analysis."). Justice Kagan agreed with the majority that "certain mistakes of law can support the reasonable suspicion needed to stop a vehicle under the Fourth Amendment." *Heien*, 574 at 68, 135 S. Ct. at 540, 190 L. Ed. 2d. 275 (Kagan, J., concurring). Still, Justice Kagan emphasized the "important limitations" courts must consider when determining whether an officer made an objectively reasonable mistake of law. *Id.* at 69, 135 S. Ct. at 541, 190 L. Ed. 2d. 275. Her concurrence also reiterated the majority's recognition that the officer's subjective understanding of the mistake of law is "irrelevant," explaining that "the government cannot defend an officer's mistaken legal interpretation on the ground that the officer was unaware of or untrained in the law." *Id*. Instead, when deciding whether a mistake of law is reasonable and "can support a seizure," courts must engage in statutory construction. *Id.* at 70, 135 S. Ct. at 541, 190 L. Ed. 2d. 275. Simply put, "[i]f the statute is *genuinely ambiguous*, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake. But if not, not." *Id.* (emphasis added). As the United States Solicitor General explained at oral argument, "the statute must pose a 'really difficult' or 'very hard question of statutory interpretation.'" *Id.* (quoting oral argument transcript).[3]

Although the majority purports to rely on *Heien* to validate its conclusion that the trooper made a "reasonable" mistake of law justifying the stop, the decision instead endorses the scenario the Supreme Court warned against—allowing confessed ignorance, rather than the ambiguity of an applicable law, to render an officer's mistake of law "reasonable." The majority expands *Heien*'s analysis beyond whether an officer was reasonably confused about the application of specific statute due to the statute's ambiguity, instead proclaiming that "the question" courts must consider "is whether the officer's mistaken belief is that the defendant's conduct amounted to a violation of the law . . . was, nevertheless an objectively reasonable take on the law."[4]

---

[3] The United States Solicitor General appeared as amicus curiae supporting affirmance. As Justice Kagan recognized, both North Carolina and the United States Solicitor General described cases where a mistake of law supports a seizure as "exceedingly rare." *Heien v. North Carolina*, 574 U.S. 54, 70, 135 S. Ct. 530, 541, 190 L. Ed. 2d 475 (2014) (Kagan, J., concurring) (citations omitted).

[4] This generalized approach to a mistake of law has been rejected by other courts. In *United States v. Williams*, No. PWG-19-134, 2019 WL 4415540, at *7 (D. Md. Sept. 16, 2019), the United States District Court for the District of Maryland refused to find a reasonable mistake of law when the statutes at issue required "cross-referencing multiple sections," recognizing that such cross-references are "not uncommon in statutory interpretation and cannot be said to make the determination 'genuinely ambiguous' or a 'very hard question of statutory interpretation.'" *Williams*, 2019 WL 4415540 at *7 (quoting *Heien*, 574 U.S. at 70, 135 S. Ct. at 541, 190 L. Ed. 2d 475 (Kagan, J. concurring)). The District Court agreed with the court in *Flint v. City of Milwaukee*, identifying that "'Statutes frequently cross-reference each other and require some effort to connect the dots. If reasonable mistakes of law were permitted on this basis alone (without (continued . . .)

This expansion of a "mistake of law" analysis under the Fourth Amendment rewrites *Heien* into dangerous, unconstitutional precedent. The State, before the circuit court, professed that the trooper was ignorant that the Executive Order *was even in effect*, as he "was unaware that said requirements continued to be suspended by Executive Order of the Governor." The State did not represent that the officer was confused as to how the Executive Order applied due to an ambiguity. The majority relies on the trooper's response to a question during cross examination at the preliminary hearing to find that the trooper made a mistake of law, but it is exceedingly clear from the record the State never argued that the trooper was confused about whether the executive order applied to inspection stickers that expired prior to the State of Emergency. Yet, the majority takes it upon itself to create a possible ambiguity. Indeed, the trooper could not have made this mistake of law, as he was unaware of the law at all. While the majority cites Justice Kagan's concurrence approvingly, it ignores her warning that "the government cannot defend an officer's mistaken legal interpretation on the ground that the officer was unaware of or untrained in the law." *Heien*, 574 U.S. at 69, 135 S. Ct. at 541, 190 L. Ed. 2d. 275 (Kagan, J., concurring). The majority's decision would allow the State, or a court upon reviewing a traffic stop in hindsight, to rely on any purported ambiguity in a law to manufacture "confusion" to justify a seizure.[5]

To reiterate, nowhere in the *Heien* majority opinion or Justice Kagan's concurrence does the Supreme Court provide that *unawareness* of the law can constitute an objectively reasonable mistake of law to justify a seizure under the Fourth Amendment. The State did not argue below that the trooper did not understand the type of expired vehicle inspections to which the Executive Order applied, or that he did not understand the application of the Executive Order. We should not make the State's argument for it now.

While the trooper did not make a reasonable mistake of law because he did not *know* about the law, the majority's conclusion that the Executive Order was ambiguous is also wrong. The Executive Order expressly suspended the "deadlines for annual vehicle inspections" during the "duration of the State of Emergency" related to Covid-19 in plain, direct, and unambiguous language.

---

showing concomitant ambiguity), virtually no mistakes of law would be unreasonable, given the often dense and inartful structure of such statutes, *writ large*.'" *Id.* (quoting *Flint*, 91 F. Supp. 3d at 1059).

[5] However, the majority tips its hand to its tailoring the decision to its preferred outcome of justifying the stop by examining the *factual* circumstances at the time of the stop. The majority frames the case in the context of the conditions during the Covid-19 pandemic, noting, among other things, that executive orders were frequent during the pandemic and issued and lifted at different times. Maj. dec. at 8 n.17. Any reliance on this as a basis for finding a mistake of law to be reasonable misapplies *Heien*, which did not examine any situation outside the face of the applicable, previously unconstrued, statutory provisions, but instead only examined whether the statutory language providing justification for the officer's reasonable suspicion to stop a vehicle could be reasonably understood to apply in another way. *See generally Heien*, 574 U.S. 54, 135 S. Ct. 530, 190 L. Ed. 2d 475.

An Ohio appellate court faced a similar situation when considering whether to suppress evidence arising out of a stop initiated for an expired vehicle registration during the Covid-19 pandemic. *See generally State v. Robertson*, 223 N.E.3d 56 (Ohio Ct. App. 2023). After the Ohio governor issued a March 2020 executive order declaring a state of emergency regarding Covid-19, the Ohio General Assembly passed an "uncodified law, to offer emergency relief" to Ohio citizens. *Id.* at 67. The uncodified law temporarily suspended the *expiration* of vehicle registrations. *Id.* at 69. In August 2020, an officer ran the defendant's "tag," realized the defendant's vehicle registration had expired, and stopped the defendant. *Id.* at 61. At the time, however, the defendant was not required to renew his registration. The Ohio appellate court reviewed the uncodified law, describing it the following way: "The plain language of H.B. 197 provides that, outside the several well-delineated exceptions, any vehicle registration that was 'otherwise expiring' during the period of emergency—March 9, 2020 through December 1, 2020—'remain[ed] valid' under the law." *Id.* at 69 (alteration in original). The appellate court determined that because the uncodified law was not ambiguous, the court "need not to examine whether [the officer's] mistake of law was reasonable as *Heien* does not support the proposition that a police officer acts in an objectively reasonable manner by misinterpreting an unambiguous law." *Id.* at 70 (also finding, arguendo, even if there was an ambiguity, the stop was objectively unreasonable because the officer "had no knowledge of [the uncodified law] or the change in law concerning vehicle registrations"). Relying on both the *Heien* majority opinion and Justice Kagan's concurrence, the appellate court rejected the trial court's determination that the officer was not at fault for not staying informed of the law, and instead explained that the "failure of the [officer's] Police Department to adequately train its officers does not make [the officer's] mistake of law objectively reasonable." *Id.* at 72.

While citing Justice Kagan's concurrence approvingly, the Supreme Court of Michigan explained that "the misunderstanding of an unambiguous statute is not an objectively reasonable mistake of law." *People v. Lucynski*, 983 N.W.2d 827, 845 (Mich. 2022) (finding an officer's mistaken understanding of a statute to be unreasonable, as the statute at issue was unambiguous). Michigan's highest court concluded, reading the *Heien* majority and the concurrence together, that "*Heien* tells us that objectively reasonable mistakes of law occur in exceedingly rare circumstances in which an officer must interpret an ambiguous statute." *Id.*; *see, e.g.*, *United States v. Stanbridge*, 813 F.3d 1032, 1037 (7th Cir. 2016) ("*Heien* does not support the proposition that a police officer acts in an objectively reasonable manner by misinterpreting an *unambiguous* statute.").

In conclusion, I strongly agree with the Michigan Supreme Court's warning: "The [Supreme] Court's holding in *Heien* is not carte blanche authority to ignore or remain ignorant of the law, nor are reasonable mistakes easily established." *Lucynski*, 983 N.W.2d at 845. Furthermore, "[h]aving a mistaken idea about the law is fundamentally different than simply not knowing the law at all." *Fuciarelli v. Good*, No. CV-14-01078-PHX-GMS, 2016 WL 4529822, at *9 (D. Ariz. Aug. 30, 2016). The majority's ill-considered conclusion allows, or even encourages, law enforcement officers to plead ignorance of the law and allows the Court to retroactively supply the reasonable suspicion for a seizure under the Fourth Amendment. The potential for dangerous, unintended consequences from this decision is self-evident. I would have, instead, reversed the circuit court's denial of the motion to suppress.

16

Therefore, having found that the traffic stop at issue offends Fourth Amendment protections, I respectfully dissent. I am authorized to state that Justice Hutchison joins me in this dissent.