## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**v.) No. 24-88** (Putnam County CC-40-2022-F-94)

**Roderick Levi Howard,**
**Defendant Below, Petitioner**

**FILED**

**October 24, 2025**

**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

The petitioner, Roderick Levi Howard, appeals the Circuit Court of Putnam County's February 2, 2024, order sentencing him upon his no contest plea to attempted possession with intent to deliver a controlled substance (fentanyl).[1] The plea agreement provided that the petitioner could appeal the circuit court's ruling denying his motion to suppress. The primary issue in this appeal concerns the circuit court's factual finding that the petitioner was under arrest when the police conducted their search that led to the discovery of the fentanyl. The petitioner contends that this factual finding was erroneous and argues that his motion to suppress should have been granted. Upon our review, finding no substantial question of law and no prejudicial error, we determine that that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

Following a traffic stop, police officers recovered 9.5 grams of fentanyl that the petitioner had concealed on his person. The officers also recovered a handgun from the petitioner's vehicle. On March 15, 2022, the petitioner was indicted on two felony offenses: (1) "possession of the controlled substance fentanyl" in excess of five grams, in violation of West Virginia Code § 60A-4-415(b); and (2) prohibited person in possession of a firearm, in violation of West Virginia Code § 61-7-7.

On May 11, 2022, the petitioner filed a motion to suppress in which he challenged the legality of the search that resulted in the recovery of the fentanyl and handgun. The circuit court held a suppression hearing on September 22, 2022. The State called one

---

[1] The petitioner appears by counsel A. Courtenay Craig. The State of West Virginia appears by Attorney General John B. McCuskey and Assistant Attorney General Lara K. Bissett. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel.

1

witness, Corporal Brandon Oiler ("Officer Oiler") of the Hurricane Police Department. Officer Oiler testified that he was parked on Interstate 64 on July 27, 2021, observing traffic when he saw a silver SUV with a California license plate traveling westbound. He explained that the SUV was traveling in the fast lane and described his response as follows:

> I made a decision to pull out on it, because it started [to] slow as [it] was going down the road, what I'd like to refer to as just a coast. They take their foot off the gas, that way I can't observe any brakes being touched. . . . Once I pulled out on the vehicle, the vehicle noticed it immediately and squeezed its car in between two other cars [in the slow lane]. . . . The vehicle in front of [the SUV] – it was less than one car length, and the vehicle behind [the SUV] had to slam on their brakes to avoid an accident. . . . As I started gaining ground on [the SUV, it] made an abrupt lane change to get off the exit [into a rest area] without using a turn signal.

Officer Oiler testified that he initiated the traffic stop after the SUV parked in the rest area. According to the CAD sheet,[2] the traffic stop began at 6:51 p.m. As he approached the vehicle, Officer Oiler observed that the petitioner was on a phone call. Officer Oiler informed the petitioner of the reason for the stop and "[f]rom there I ran his driver's license through Putnam County Dispatch, and they came back with a positive warrant out of . . . Wyoming County."[3] Within approximately ten minutes of the traffic stop, two additional officers, Matthew Baumgardner and Corporal Wilson, arrived at the scene. Officer Oiler testified that after Dispatch informed him of the outstanding warrant, he and Corporal Wilson placed the petitioner under arrest, handcuffed him, and that Corporal Wilson performed a pat down search incident to arrest. During the course of this search, the officers noticed that the petitioner was "standing funny," and suspected that he was concealing something in his genitalia. Due to the sensitive location of the suspected item, Officer Oiler stated that the petitioner was given the choice to retrieve the item himself because the officers "preferred not to go in there with [their] own hands and grab [the petitioner's]

---

[2] CAD stands for computer-aided dispatch. A CAD sheet is a time-stamped report that is generated when dispatch operators search for information through their database.

[3] Officer Oiler testified that Dispatch also informed him that the petitioner's West Virginia driver's license was suspended. The petitioner asserts that his West Virginia driver's license was valid at that time, and he is critical of Officer Oiler's testimony that the suspended license was one of the reasons for the arrest. We decline to address this issue in detail because it is not germane to the main issue in this appeal—whether the circuit court erred by making the factual finding that the petitioner was under arrest when the search that resulted in the discovery of the fentanyl occurred.

genitalia to retrieve the contraband." According to Officer Oiler, the petitioner stated that he would remove the item. The handcuffs were removed and the petitioner retrieved 9.5 grams of fentanyl from his underwear. After this search, Officer Oiler stated that the petitioner was asked about the contents of his vehicle, and the petitioner said there might be "a little weed" in the car. Upon searching the vehicle, the officers discovered a handgun hidden under the car seat.

Although the CAD sheet indicates that the arrest occurred one hour and forty-one minutes after the traffic stop was initiated, Officer Oiler testified during the suppression hearing that the petitioner was arrested and handcuffed after Dispatch informed him of the outstanding warrant, which occurred within approximately ten minutes of the stop being initiated. The petitioner's counsel asked Officer Oiler about this discrepancy during the hearing:

> Q. If you ascertain that Mr. Howard's license was suspended in that initial call, or that he had warrants outstanding in that initial call, what would cause the delay of an hour and 41 minutes in arresting him?
>
> A. So[,] there would have not been a delay in actually physically effecting the arrest. There could have been a delay in simply putting that radio traffic out, or I tried to put it out and it doesn't come across to Dispatch, or me even delegating that to someone else and then forgetting to do it.
>
> Q. Well, is that what happened or is that – or are you speculating?
>
> A. Sir, I can't give a definitive answer on it. All I know is that he wasn't placed under arrest an hour and 30 minutes later.

Further, Officer Oiler testified that the arrest may not have been reported to Dispatch until the officers completed their search of the petitioner's vehicle. He testified that a vehicle search "takes a long, long time if you search [it] very properly and thoroughly."

Throughout cross-examination, Officer Oiler was asked about the timeline of the arrest. The petitioner's counsel asked Officer Oiler whether the petitioner was under arrest when the pat down search occurred. Officer Oiler replied, "Yes sir, I believe so." Officer Oiler was also asked whether the officers informed the petitioner of his *Miranda* rights[4]

---

[4] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

before performing the search that resulted in the discovery of the fentanyl. During this exchange, Officer Oiler again testified that the petitioner was under arrest when the search occurred:

> Q. Okay. But he was in cuffs and was not free to leave; correct?
>
> A. Yes, sir. *He was under arrest*.
>
> Q. Okay. So[,] did you tell him that he [had] the right to [not] incriminate himself?
>
> A. Sir, *it was a search incident to arrest*. Either way I preferred not to go in there with my own hands and grab his male genitalia to retrieve the contraband.

(Emphasis added).

At the conclusion of Officer Oiler's testimony, the circuit court discussed whether the CAD sheet or potential recordings of calls between Officer Oiler and Dispatch could objectively determine "what time the Officer learned that there was a pending warrant after the traffic stop on Mr. Howard." The court took a recess to permit the parties to consider this issue. Following the recess, the State dismissed both charges against the petitioner explaining that (1) it would not pursue the prohibited person in possession of a firearm count because the officers failed to inform the petitioner of his *Miranda* rights prior to asking him about the vehicle that resulted in the recovery of the handgun; and (2) it was moving the court to dismiss the possession of fentanyl count because it discovered that the petitioner had been indicted under a repealed statute. The State moved the court to dismiss the possession of fentanyl count without prejudice and with leave to reindict the petitioner under an existing statute. The circuit court granted the State's motion.

On November 14, 2022, the petitioner was reindicted on one felony offense: possession with intent to deliver a controlled substance (fentanyl), in violation of West Virginia Code § 60A-4-401(a).[5] On January 23, 2023, the petitioner filed a motion to suppress.[6] Thereafter, the circuit court heard oral argument on the motion to suppress. This

_____

[5] The Honorable Phillip M. Stowers was the circuit court judge initially assigned to this case. Judge Stowers presided over the evidentiary hearing on the motion to suppress. The Honorable Joseph K. Reeder was the circuit court judge assigned to this matter after the petitioner was reindicted.

[6] At a pretrial hearing on March 3, 2023, the petitioner's counsel supplemented the record with "the grand jury transcript and the criminal complaint for the Court's review,"

4

was not an evidentiary hearing. Instead, the parties and court relied on Officer Oiler's testimony from the previous suppression hearing.

On May 30, 2023, the circuit court entered an order denying the motion to suppress. It relied on Officer Oiler's testimony and concluded that the arrest occurred after Dispatch informed Officer Oiler that the petitioner had an active warrant out of Wyoming County. Further, the court found that

> [Officer] Oiler testified that Officer Wilson observed Defendant walking in a strange manner, which, in their experience, the officers believed meant he had something stored in his pants or underwear. At this time, Defendant was already under arrest and placed in handcuffs. Under *Arizona v. Gant*, [556 U.S. 332 (2009),] the officers had the authority to search Defendant's person for weapons or any destructible evidence.
>
> Defendant implies that the officers' request that he take the item from his person while under arrest and not Mirandized was tantamount to eliciting a statement against interest. However, [Officer] Oiler testified that he had a reasonable suspicion that Defendant was hiding something in his pants. Further, he testified that he asked Defendant to retrieve the item from his pants as a courtesy to him and to save him from embarrassment. Had Defendant not retrieved the item himself, the contraband would have been within Defendant's control

---

as well as "phone records and dispatch records." Based on the record before this Court, it is unclear which "phone records and dispatch records" were part of the supplement provided to the circuit court. We note that Officer Oiler testified before the grand jury on two occasions. In his testimony that led to the original indictment, Officer Oiler testified that the arrest occurred after he was informed that the petitioner had an active warrant from Wyoming County. He was asked the following question about the search that resulted in the discovery of the fentanyl: "You were placing him under arrest so it would have been a search incident to arrest, correct?" He replied, "Yes, ma'am." Similarly, in his testimony before the grand jury that led to the petitioner being reindicted, Officer Oiler testified that Dispatch informed him that the petitioner "had a warrant out of Wyoming County for fleeing and resisting, at which point in time we placed him under arrest. We began to speak to him a little bit further and [gave] him a pat down incident to arrest[.]" Likewise, the criminal complaint provided that the petitioner was placed under arrest after Dispatch informed Officer Oiler of the Wyoming County warrant.

and subject to a lawful search incident to arrest. Thus, the Court FINDS the search of Defendant was permissible.

Following the circuit court's denial of the motion to suppress, the petitioner entered a no contest plea to attempted possession with intent to deliver a controlled substance. This plea allowed the petitioner to appeal the circuit court's ruling on the motion to suppress. On February 2, 2024, the circuit court entered its sentencing order which placed the petitioner on two years of probation.[7] After entry of this order, the petitioner filed the instant appeal alleging that the circuit court erred by denying his motion to suppress.

Our standard of review for a motion to suppress is as follows: "[W]e take the facts in the light most favorable to the State, review the circuit court's factual findings for clear error, and conduct a de novo review of the determination of whether the search or seizure violated the Fourth Amendment." *State v. Snyder*, 245 W. Va. 42, 46, 857 S.E.2d 180, 184 (2021) (internal citation omitted).[8] With the foregoing in mind, we turn to the parties' arguments.

---

[7] The circuit court sentenced the petitioner to a term of not less than one nor more than three years of confinement in the penitentiary. However, the court suspended this sentence and granted the petitioner's motion for probation.

[8] This standard is derived from syllabus points one and two of *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996):

> When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

> In contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed de novo. Similarly, an appellate court reviews de novo whether a search warrant was too broad. Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous

The petitioner raises three assignments of error. First, he argues that the circuit court erred by making the factual finding that he was under arrest when the search that led to the recovery of the fentanyl occurred. The petitioner's second and third assignments of error are premised on his contention that he was not under arrest when this search occurred. Thus, our threshold inquiry concerns the circuit court's factual finding on this issue. Our analysis begins with a discussion of our law on a warrantless search performed incident to arrest. We then address the petitioner's argument that he was not under arrest when the search occurred.

This Court has previously addressed the admissibility of evidence seized during a warrantless search and held that

> [s]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution—subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made that course imperative.

Syl. Pt. 20, *State v. Ladd*, 210 W. Va. 413, 557 S.E.2d 820 (2001) (internal citation and quotation omitted).

There is no dispute that the officers' recovery of the fentanyl occurred through a warrantless search. The State asserts that the search was proper because it fell within one of the recognized exceptions to the general warrant requirement—search incident to a valid arrest.[9] This Court has recognized that "[o]ne of the most frequently utilized exceptions to the warrant requirement is the search incident to an arrest." *State v. Julius*, 185 W. Va. 422, 426, 408 S.E.2d 1, 5 (1991). We have held that "[a] warrantless search of the person and the immediate geographic area under his physical control is authorized as an incident to a valid arrest." Syl. Pt. 6, *State v. Barefield*, 240 W. Va. 587, 814 S.E.2d 250 (2018) (internal

interpretation of the law, or, based on the entire record, it is clear that a mistake has been made.

[9] *See State v. Farley*, 230 W. Va. 193, 197, 737 S.E.2d 90, 94 (2012) ("Examples of recognized exceptions to the general warrant requirement include certain brief investigatory stops, searches incident to a valid arrest, seizures of items in plain view, searches and seizures justified by exigent circumstances, consensual searches, and searches in which the special needs of law enforcement make the probable cause and warrant requirements impracticable.").

citation omitted). This exception to the warrant requirement "has traditionally been justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime." *U.S. v. Edwards*, 415 U.S. 800, 802 (1974). Finally, we note that "[w]hen the State seeks to introduce evidence that was seized during a warrantless search, it bears the burden of showing the need for an exemption from the warrant requirement and that its conduct fell within the bounds of the exception." *State v. Lacy*, 196 W. Va. at 111, 468 S.E.2d at 726. With this background in mind, we consider the petitioner's first assignment of error.

The petitioner argues that the circuit court erred by making the factual finding that he was under arrest when the search of his person occurred. He claims that he was not under arrest when the search occurred and that the search incident to arrest exception does not apply. The petitioner acknowledges that Officer Oiler testified—during both grand jury proceedings and during the suppression hearing—that he was under arrest when the search occurred. However, the petitioner relies on three evidentiary sources that, he argues, refute Officer Oiler's timeline of when the arrest occurred: the CAD sheet; transcripts of conversations between Officer Oiler and Dispatch; and a cell phone record from the petitioner's friend. Based on our review of these three sources, we find that the CAD sheet is the only evidence that offers substantive support to the petitioner's argument.[10]

---

[10] The petitioner relies on two transcripts of conversations between Officer Oiler and Dispatch. He highlights certain portions of these conversations and argues that they support his contention that he was not under arrest when the search resulting in the recovery of the fentanyl occurred. However, we find these transcripts to be of negligible value in this appeal because neither transcript includes a timestamp. Without timestamps demonstrating precisely when these conversations occurred, these transcripts provide no definitive resolution as to when the arrest occurred.

Similarly, we find that the cell phone record from the petitioner's friend is of limited value. The petitioner argues that when Officer Oiler approached his vehicle at the beginning of the traffic stop, he was on a phone call with a friend, Ms. Lassiter. According to Ms. Lassiter's phone record, this call lasted from 6:50 p.m. through 7:21 p.m. The petitioner's brief provides, "If [the petitioner] was actually under arrest [within the first ten minutes of the traffic stop] . . . and placed in cuffs, as Officer Oiler claimed, it does not explain why the phone call with Ms. Lassiter continued for 30 minutes." We find that this phone record does not establish when the arrest occurred. Neither the petitioner, nor his friend, Ms. Lassiter, testified during the motion to suppress hearing. Therefore, with no context as to what was occurring during the call, we find that the phone record, by itself, does not offer any significant indication as to when the arrest occurred and falls far short of establishing that the circuit court's factual finding on this issue was clearly erroneous.

8

The petitioner correctly notes that the CAD sheet provides that the arrest occurred one hour and forty-one minutes after the traffic stop was initiated. This is in direct conflict with Officer Oiler's testimony that the arrest occurred within approximately ten minutes after the stop was initiated. Officer Oiler was cross-examined on this issue and offered multiple reasons why the CAD sheet may not have accurately recorded when the arrest occurred. These reasons included a possible delay in communicating the arrest to Dispatch; that the task of reporting the arrest could have been delegated to someone else; and that the arrest may not have been reported until the officers completed their search of the petitioner's vehicle. While Officer Oiler stated that he could not give a definitive answer as to what caused the delay, he consistently testified that the petitioner was arrested shortly after the stop occurred and prior to the search of his person that resulted in the recovery of the fentanyl. Importantly, no other witnesses, including the Dispatch worker, other officers, or the petitioner, testified in this matter. Thus, in resolving the factual conflict as to when the arrest occurred, the circuit court was left to weigh Officer Oiler's testimony against the entry on the CAD sheet.

Based on our review of the record, we do not find that the circuit court's factual resolution of this issue was clearly erroneous. *See* Syl. Pt. 3, in part, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994) ("On appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. *Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard.*" (Emphasis added)). Officer Oiler offered multiple reasons why the CAD sheet may not have accurately recorded the time of the arrest, and the circuit court found this testimony to be credible. Additionally, Officer Oiler was repeatedly asked about the timeline of the arrest and consistently testified that the petitioner was arrested and handcuffed after Dispatch informed him of the active Wyoming County warrant, which he testified occurred prior to the search that resulted in the recovery of the fentanyl. When reviewing these facts "in the light most favorable to the State,"[11] and considering the circuit court's factual findings pursuant to our clearly erroneous standard of review, we conclude that the petitioner's first assignment of error must be rejected.

The petitioner raises two additional assignments of error. However, we need not address these arguments in detail because both are predicated on his claim that he was not under arrest when the search occurred. First, he argues that because "[the petitioner] was not officially under arrest during his pat down, contraband must be immediately apparent before officers may remove it from the detainee's person without a warrant." As previously indicated, we have found that the circuit court did not err by concluding that the petitioner was under arrest when the search occurred. Thus, this assignment of error necessarily fails.

---

[11] Syl. Pt. 1, in part, *Lacy*, 196 W. Va. 104, 468 S.E.2d 719.

Finally, the petitioner argues that he was improperly forced to provide evidence against himself without the benefit of a *Miranda* warning while he was only detained, but not arrested, when the officers asked him to retrieve the item from his pants. Again, this argument is dependent on a contention that we have rejected—that the petitioner was not under arrest when the search occurred. Further, we find that the petitioner's argument conflates the removal of contraband on his person discovered during a search incident to arrest with a coerced confession. This Court has held that a defendant may not invoke his *Miranda* rights "outside the context of custodial interrogation." Syl. Pt. 3, in part, *State v. Bradshaw*, 193 W. Va. 519, 457 S.E.2d 456 (1995). Similarly, in syllabus point five of *State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1, we held: "Where physical evidence is lawfully seized from the person of the defendant who has been lawfully arrested, the defendant may not interpose a Sixth Amendment right to counsel to render the seizure invalid." Accordingly, we reject the petitioner's third assignment of error.

The circuit court's February 2, 2024, order is affirmed.

Affirmed.

ISSUED: October 24, 2025

CONCURRED IN BY:
Chief Justice William R. Wooton
Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

10